Elmore v. Overton.

No. 11,715.

ELMORE v. OVERTON.

COUNTY SUPERINTENDENT.—*Powers of, not Judicial.*—The office of county superintendent belongs to the executive department of the State, and the statute does not confer upon the incumbent either judicial or *quasi* judicial power in the matter of licensing persons to teach in the common schools.

SAME.—*Liability of.—Discretion as to Issuing License.*—The statute confers upon the county superintendent a discretion on the subject of licensing teachers, which is so far analogous to judicial discretion that he is protected from any claim for damages on account of any mere mistake in his decision, or error in judgment, either in granting or withholding a license.

SAME.—*Maliciously Withholding License.*—A county superintendent is liable in damages for maliciously withholding license to teach from an applicant lawfully entitled to receive the same, and he will be held to have acted maliciously where he acts either from wilful and wicked or from corrupt motives.

SAME.—*Granting and Issuing License.*—There is no legal distinction between the granting of a license to teach, and the act of issuing a certificate of that fact. The terms are convertible, and the " licensing " im-

plies the issuing to an applicant of a written permission to teach in the public schools.

SAME.—*Evidence.*—*Practice.*—In an action against a county superintendent for maliciously withholding a license, oral proof of admissions by the defendant that he had granted a license to the applicant is inadmissible, unless it is first shown that he kept no such record as required by the statute, or that such record was incorrect. The presumption is that he kept a record of his proceedings which would itself be the best evidence.

SAME.—*Examination Papers.*—Where, in an action against a county superintendent for maliciously withholding license, the defendant is called as a witness for the plaintiff and he is examined as to a part of the examination papers, the other parts having been lost, it is not error to exclude such fragmentary part of such papers from evidence.

From the Montgomery Circuit Court.

*E. C. Snyder* and *W. W. Thornton,* for appellant.

*T. E. Ballard, M. E. Clodfelter, M. D. White* and *W. S. Moffett,* for appellee.

NIBLACK, C. J.—Action by James Elmore, a person occasionally engaged, and desirous of continuing, in the business of a common school teacher, against John G. Overton, formerly the superintendent of the common schools of Montgomery county, for damages for refusing, while such superintendent, to issue to him a license, as such teacher, after he had, by law, become entitled to receive such a license.

The complaint was in four paragraphs; but a demurrer was sustained to the second paragraph, and, in consequence, it is not in the record.

The first paragraph charged that, notwithstanding the plaintiff had furnished satisfactory evidence of his good moral character, and had passed an examination which entitled him to a license as a teacher in the common schools for the period of twelve months, the defendant unlawfully and maliciously refused to grant and to issue to him a license as a teacher in such schools.

The third paragraph charged that, upon the plaintiff having furnished satisfactory evidence of good moral character, and having passed a successful examination, as alleged in the

first paragraph, the defendant granted to him a license to teach in the common schools of Montgomery county, but that the defendant had thereafter, wickedly and corruptly, failed and refused to issue to him, the plaintiff, a certificate of the fact that a license, as such teacher, had been so granted to him.

The fourth paragraph was substantially the same as the third, with the additional averment that the defendant had given out and pretended, as a reason for not issuing a certificate of the fact that the plaintiff had been granted a license to teach in the common schools of the county, that he, the plaintiff, was not a man of good moral character, by means of which the plaintiff became greatly scandalized and injured in his business as a teacher in the common schools.

Issue, trial, verdict and judgment for the defendant.

Error is assigned upon the overruling of the plaintiff's motion for a new trial, and by the assignment of cross errors questions are made upon the sufficiency of the first, third and fourth paragraphs of the complaint.

It is well settled, and hence conceded, that a judicial officer is not civilly liable for an erroneous decision, however gross the error may have been, or however bad the motive was which inspired it. Such a liability would be inconsistent with the proper exercise of judicial functions. Besides, other appropriate means are provided for relief against a false or erroneous judgment. *Larr* v. *State, ex rel.*, 45 Ind. 364; *Kress* v. *State, ex rel.*; 65 Ind. 106; *State, ex rel.*, v. *Jackson*, 68 Ind. 58; *Halloran* v. *McCullough*, 68 Ind. 179; *Cooley Torts*, pp. 379, 403; *Stewart* v. *Cooley*, 23 Am. R. 690; *Busteed* v. *Parsons*, 25 Am. R. 688; *Rains* v. *Simpson*, 32 Am. R. 609; *Jones* v. *Brown*, 37 Am. R. 185; 2 Wait Actions and Defenses, 117.

It is claimed that a county superintendent of common schools, in passing upon the evidence offered in support of the moral character of an applicant for a license as a teacher, as well as in judging of his qualifications and fitness to be-

Elmore v. Overton.

come a teacher, acts either judicially, or to such an extent *quasi* judicially as to entitle him to the same immunity against a civil action for an erroneous or false judgment as that enjoyed by a judicial officer.

Section 4424, R. S. 1881, provides for the election of a county superintendent of common schools in each county. Section 4425 prescribes that " Said county superintendent shall examine all applicants for license as teachers of the common schools of the State, by a series of written or printed questions, requiring answers in writing, if he wishes so to do ; and, in addition to the said questions and answers in writing, questions may be asked and answered orally ; and if, from the ratio of correct answers and other evidences disclosed by the examination, the applicant is found to possess a knowledge which is sufficient in the estimation of the superintendent to enable said applicant to successfully teach, in the common schools of the State, orthography, reading, writing, arithmetic, geography, English grammar, physiology, and the history of the United States, and to govern such schools, said superintendent shall license said applicant for the term of six months, twelve months, eighteen months, or two years, according to the ratio of correct answers and other evidences of qualification given upon said examination, the standard of which shall be fixed by the superintendent. Applicants, before being licensed, shall produce to the superintendent the proper trustee's certificate, or other satisfactory evidence of good moral character : *Provided*, That after an applicant has received two licenses in succession, for two years, in the same county, the superintendent thereof, after the expiration of the last license issued, may renew the same without a re-examination, at his discretion."

As we construe this section of the statute, it does not confer on the county superintendent either judicial or *quasi* judicial power in the matter of licensing persons to teach in the common schools ; nor is such superintendent invested with any such power by any other provision of the statute

having relation to the duties of his office. The office in question belongs to the executive department of the State, and the duties attached to it are, strictly speaking, of a merely administrative character, that is, are in aid of the execution of, and assist in giving force and effect to, other provisions of our common school system. Any attempt, therefore, to confer on such an officer any power essentially 'judicial would be in derogation of article 3 of the Constitution of our State, which prohibits an officer in the executive department from discharging any duty pertaining to either the legislative or judicial departments of the State government. But we regard the discretion conferred upon the county superintendent on the subject of licensing teachers as being so far analogous to a judicial discretion that he is protected from any claim for damages on account of any mere mistake in his decision, or error in judgment, whether in granting or withholding a license to a person desirous of becoming a qualified teacher in the common schools. In that respect, we think, a county superintendent of schools occupies a similar, and generally analogous, position to that of an inspector of an election, who can not be made responsible for a mere error of judgment in rejecting a ballot offered by a qualified voter, but who may be required to answer in damages for *maliciously* rejecting such a ballot. *Gates* v. *Neal*, 23 Pick. 308; *Jenkins* v. *Waldron*, 11 Johns. 114; *Goetcheus* v. *Matthewson*, 61 N. Y. 420; *Weckerly* v. *Geyer*, 11 S. & R. 35; *Rail* v. *Potts*, 8 Humph. 225; *State* v. *McDonald*, 4 Harrington, 555.

After discussing and approving the doctrine that a judicial officer can not be held pecuniarily responsible for an erroneous decision concerning any matter of which he has jurisdiction, however gross the error, or bad the motive which led to it, Cooley, in his work on Torts, at page 411, says: " But it is an interesting and very important question whether, in the case of that class of officers who do not hold courts, but exercise what may be and often is called power

Elmore v. Overton.

*quasi* judicial, like assessors of lands for taxation, the immunity is not, after all, only partial and limited by good faith and honest purpose.   There are certainly many cases which hold, and more which assume, that the law will hold such officers liable if they act maliciously to the prejudice of individuals.   Thus, it is said that the members of a school board may be held responsible for the dismissal of a teacher, if they act maliciously and without cause; and a county clerk, for wilfully and maliciously approving an insufficient appeal bond; and a wharfmaster, for the removal of a ship from a certain dock, where it can be shown that the order was given maliciously, and with the purpose to cause injury."   In this connection it may be stated that where a public officer acts either from wilful and wicked, or from corrupt motives, he is held to act maliciously.   While, therefore, the non-liability of a county superintendent for a mere error in judgment in refusing to grant a license to an applicant who desires to become a teacher is fully conceded, we are of the opinion that he ought to be held liable for *maliciously* withholding a license from an-applicant lawfully entitled to receive such a testimonial to his qualifications as a teacher in the common schools.

In coming to this conclusion, we feel that we are supported by the very decisive weight of authority in analogous cases, and are in harmony with the general scope and spirit of article 3 of the Constitution, which divides our State government into three separate and distinct departments.   *Gregory* v. *State, ex rel.*, 94 Ind. 384 (48 Am. R. 162).   Consequently, the objections urged against the sufficiency of the several paragraphs of the complaint, now before us, can not be sustained.

At the trial, the plaintiff introduced evidence tending to show that in September, 1882, while the defendant was county superintendent of common schools, he was an applicant for a license as a teacher, and was examined by the defendant as to his qualifications and fitness to receive such a

license. The plaintiff, also, introduced evidence tending to prove that the ratio of his answers to questions addressed to him at his examination was, as to educational qualifications, high enough to entitle him to receive a license to teach for as much as six months, and possibly for the period of twelve months. It was then proposed by counsel to prove by the plaintiff that a few days after his examination, the defendant told him that he, the defendant, had granted to him, the plaintiff, a license to teach in the common schools; but objection being made upon the ground that, as the defendant was required to keep, and presumably had kept, a record of his proceedings as regards granting, as well as refusing, licenses to applicants, oral evidence was primarily inadmissible to prove either that a license had been granted or had been refused, the proposed proof was excluded.

Section 4428, R. S. 1881, directs that " The county superintendent shall provide a blank-book at the expense of the county, in which he shall keep minutes of his proceedings, and shall deliver said record, and all other books, papers, and property appertaining to his office, to his successor, and take a receipt therefor."

Previous to the offer to prove what the defendant had told the plaintiff, as above set forth, there was no evidence as to whether the defendant had or had not kept minutes of his proceedings while he was county superintendent. In the absence of any evidence on the subject, the presumption was that the defendant had done his duty as to keeping such a record as the law required him to keep. Evans v. Ashby, 22 Ind. 15; Hale v. Talbott, 86 Ind. 447; Lawson Presump. Ev. 53, 61. If a correct record had been made of the defendant's proceedings upon the plaintiff's application for a license, it constituted the best evidence of those proceedings. If an incorrect record, or no record at all, had been made, the fact ought to have been averred preparatory to letting in secondary evidence. As no foundation was laid for the introduc-

tion of secondary evidence, the circuit court did not err in excluding the proof offered by the plaintiff.

There is another ground upon which we regard the evidence offered and excluded as having been quite immaterial. There is, as we believe, no authority in law for the distinction between granting a license to teach as a *quasi* judicial act and the ministerial act of issuing a certificate of the fact that such license has been granted, sought to be maintained by the allegations of the third and fourth paragraphs of the complaint respectively, and which was implied by the proffered evidence in question.

The granting of a license, and the issuing of a license, are clearly convertible terms within the meaning of section 4425 of the existing statutes of the State, herein above set out. Webster's dictionary states the secondary meaning of the word " license " to be " The written document by which a permission is conferred," and it is plainly in that sense that the word is used in the section of the statutes lastly above referred to. The licensing authorized by that section, therefore, implies the issuing to an applicant of a written permission to teach in the public schools.

The plaintiff called the defendant to the stand as a witness, and in connection with his testimony the defendant produced several sheets of paper which he said had been used in the examination of the plaintiff, and upon which certain questions and answers, as well as figures and marks, were written. He was examined at some length as to what certain things written or marked on the face of those papers indicated, and as to the relative ratio of the plaintiff's answers to some of the questions addressed to him, as well as to the manner in which the plaintiff sustained himself generally in his examination. In that connection, however, it was made to appear that the papers in question were only a part of the papers used in the examination of the plaintiff, the rest having been lost or destroyed in some way unknown to the defendant. The plaintiff thereupon offered the sheets of paper

produced in court by the defendant as above, with the memorandums thereon in evidence, but the circuit court refused to admit these papers, as well as the memorandums upon them, in evidence, and that decision is claimed to have been palpably erroneous.

In the first place, the papers thus offered as evidence were, as has been seen, only fragmentary parts of a full set of papers pertaining to the occasion upon which they were used, and were hence of themselves, in that condition, of very little, if any, value as evidence for any purpose. In the next place, the accuracy of all the memorandums made or entered upon these papers was not sufficiently established by preliminary evidence to entitle them to be put in evidence in their entirety. In the third place, as these papers contained only fragmentary and unsigned memorandums, and as they were primarily produced and used in court to refresh the defendant's memory as a witness, and as it was not made known that the witness could not testify orally to all the matters embraced in the memorandums, after refreshing his memory by a reference to them, no emergency was shown for the introduction of the papers themselves in evidence. Wharton Ev., sections 516, 517; Kelsea v. Fletcher, 48 N. H. 282; Clark v. State, 4 Ind. 156.

Under the circumstances in connection with which these papers were proposed as evidence, they might doubtless have been admitted as such without material injury to either party, but evidently no available error resulted from their exclusion. It may be remarked, however, that as applicable to memorandums used to refresh the memory of a witness, different rules sometimes prevail as to the use of such memorandums upon cross-examination.

The judgment is affirmed, with costs.

Filed Jan. 7, 1886.