Filed April 27, 1894.

---

No. 16,756.

## Branaman *v.* Hinkle et al.

Office and Officer.—*Judicial Officer.*—*Township Trustee and County Superintendent.*—Township trustees and county superintendents of schools are not judicial officers.

Same.—*Public Officer.*—*Discretionary Powers.*—*Mistake.*—*Damages.*— Where a public officer possessing discretionary powers makes an honest mistake in his judgment as to his duties under the law, or as to facts submitted to him, where he has a discretion, it will not render such officer liable for damages.

Libel.—*Conspiracy.*—*Procuring Charges to be Made Against School Teacher.*—*Complaint.*—*Necessary Allegations.*—In an action in the nature of a libel, by a school teacher, against a township trustee and a county superintendent, charging the defendants, in furtherance of a conspiracy on their part to discharge and dismiss him as a teacher, and bring him into disgrace and ignominy in his profession, of having procured certain false charges to be made against him, it must be made to appear in the complaint that the act complained of was wanton and malicious, and the act complained of as libelous (the charges) must be set out in the complaint, they being the foundation of the action. The complaint, in such action, should also state the number and names of persons in the school district who are entitled to vote at school meetings therein, and the number and the names of the persons who attached their names to the petition accompanying the charges.

From the Jackson Circuit Court.

*D. A. Kochenour*, *N. Crooke* and *M. Owen*, for appellant.

*R. Applewhite* and *J. F. Applewhite*, for appellees.

DAILEY, J.—The complaint of appellant alleges, in substance, that in the years 1890 and 1891 he was a reputable teacher licensed to teach in the public schools of Jackson county, Indiana; that for a period of five years he had been so engaged, and possessed and enjoyed a high reputation and standing in the profession for learning, skill, executive ability, and success as a teacher; that on the 28th of July, 1890, he entered into a contract with Owen school township in said county, through its then trustee, to perform the duties of principal teacher in one of its designated districts for a term of six months, at a compensation of $3.25 per day, and all outside tuition fees and janitor service; that in pursuance of such contract, on the 15th of September, 1890, he entered upon his duties; that defendant, Hinkle, was the acting trustee of said township at said time, still is, and ever since has been, and the defendant, Black, was then, and still is, the county superintendent of said county; that the defendants, being envious of the success, popularity and good repute of plaintiff as a teacher, and being jealous of his personal and social standing and influence in said community, unlawfully combined, confederated and conspired together to unlawfully and without cause, injure and destroy his good repute as a scholar and teacher, to bring him into disgrace and ignominy in his profession, and to break down and destroy his fair name and influence in the community and throughout said county, and to have him discharged and removed as such teacher and deprived of the benefits of said contract; that to the end and in furtherance of said unlawful confederacy the defendants, on November 27, 1890, while the plaintiff was so engaged in his duties as teacher, unlawfully, wickedly, maliciously and without probable cause, procured, and caused to be procured, certain irregular, false

and pretended charges to be made against him as teacher of said school, for cruelty, incompetency and general neglect of duty; that said charges were not petitioned for by a majority of those entitled to vote at school meetings in said district; that said charges were filed with defendant Hinkle, as trustee, and he thereupon assumed to hear the same, over the plaintiff's objection and protest, and, in furtherance of said conspiracy, wrongfully and unlawfully assumed jurisdiction when he knew that the charges were not made by a majority of such voters; that defendant Hinkle gave him a pretended trial thereon, on December 6, 1890, and thereupon did willfully, falsely, corruptly, and contrary to the law and the evidence, but pursuant to the unlawful conspiracy, find plaintiff guilty of said charges and order his discharge and removal as teacher aforesaid; that plaintiff, being in ignorance of the conspiracy, thereupon appealed from the decision and judgment of said trustee to the county superintendent, Black, who assumed to hear, try and determine said pretended charges on appeal to him from said trustee; that on the trial thereof before said Black, he unlawfully and without right over the objection and protest of plaintiff, suffered, authorized, and permitted the adding of new and additional names of petitioners to the pretended charges as made and filed before the trustee; that after giving plaintiff a pretended trial on his appeal, the defendant Black, on December 29, 1890, in furtherance of the aforesaid conspiracy, corruptly, falsely, willfully, and contrary to law and the evidence, sustained the jurisdiction of said trustee to hear and determine said cause, and affirmed the decision and judgment of his co-defendant and co-conspirator Hinkle and removed the plaintiff from his position as teacher of said school; that plaintiff was wholly without fault, but was wrongfully, unlawfully, maliciously, and without cause, by and through

the unlawful conspiracy of defendants, removed and discharged from teaching said school and prevented from finishing said term while the same was but half out, depriving him of further benefits and wages thereunder, throwing him out of employment, greatly injuring his standing and reputation, besides compelling him to expend $500 in and about his defense thereto, by reason of all which he has sustained damages in the sum of $5,-000, for which he demands judgment.

A demurrer was sustained to the complaint by the Jackson Circuit Court, upon the ground that it did not state facts sufficient to constitute a cause of action, in this, that the complaint showed that the trustee and county superintendent were acting in judicial capacities when they made their several decisions against the appellant, and were not answerable for their acts as judicial officers. Section 1, Article 7 of the Constitution of this State, being section 161 Burns' Rev. 1894, treats of judicial power as follows: "The judicial power of the State shall be vested in a Supreme Court, in circuit courts, and in such other courts as the General Assembly may establish."

In *Waldo* v. *Wallace*, 12 Ind. 569, it is said that judicial offices are those which relate to the administration of justice, and that the true question seems to be: is this office a part of the system established by the General Assembly, under the constitution, to sustain the government therein provided for by the judicial administration of the laws of the State and of justice? The test of a court of record is whether it has or has not the power to fine and imprison. On page 583 of the same case PERKINS, J., speaking for the court, said: "A court is a tribunal charged, as a substantive duty, with the exercise of judicial power. * * * A judge will be none the less a judicial officer because some duties he may

have to perform are administrative in their character; nor will an administrative become a judicial officer, simply because some acts which he may be required to perform may be, to some extent, judicial in their character.''

Applying this test to the case under consideration, the court would have little trouble in reaching the conclusion that the offices of trustee and county superintendent are not judicial. But we are not without authority upon this question. The case of *Elmore* v. *Overton*, 104 Ind. 548, was an action by a teacher against a county superintendent of schools for damages for refusing, while occupying the position, to issue to him a license as such teacher after he had, by law, become entitled to receive such a license. In the opinion the court say the office of county superintendent belongs to the executive department of the State, and the statute does not confer upon the incumbent either judicial or *quasi* judicial power in the matter of licensing persons to teach in the common schools; that it confers upon the county superintendent a discretion on the subject of licensing teachers, which is so far analogous to judicial discretion that he is protected from any claim for damages on any mere mistake in his decision or error in judgment either in granting or withholding a license. It is a wise and salutary rule that there can be no action maintained against this class of officers where they act without malice. An honest mistake in judgment, either as to their duties under the law or as to the facts submitted to them, ought not to subject such officers to a suit for damages. They may judge wrongly, and so may a judicial tribunal, but the party injured can have no cause of action when they act in good faith and in the line of what they believe is honestly their duty. Any other rule might result in great hardship to conscientious men, who, with the purest of motives, have faithfully endeavored to perform the du-

ties of their trust. Although of great importance to the public, no considerable profits attach to these offices, and the duties are usually performed by persons sincerely desiring to do right by their neighbors, without hope or expectation of personal gains, and it would be a harsh rule that would subject such officers to a suit for damages for every mistake they may make in the good faith discharge of their official duties. In order to charge a liability it must be averred and proved that such action was taken either wantonly or maliciously; that is, from willful and wicked or corrupt motives. *Elmore* v. *Overton, supra.*

This rule applies as well to the official conduct of a township trustee as to a county superintendent, as neither is a judicial officer. In the case at bar, the appellant recognizes this distinction and attempts to take the case out of the operation of the general rule by alleging that these officers entered into a conspiracy to destroy him in his business, and that they were actuated by malicious and corrupt motives.

As we understand it, this complaint proceeds upon the theory of a libel; that these defendants entered into a conspiracy with each other to cause written charges to be preferred against the appellant, false in their character, with the design of injuring and destroying him in his business, and that they accomplished their purpose. It is an elementary rule of law that a personal injury, by reason of a false charge and a malicious defamation of character, calculated to bring the person assailed into disrepute and expose him to public hatred, contempt, and ridicule, is actionable. It seems difficult to give a precise and lucid definition of libel.

In Odgers' Libel and Slander (2d ed.), p. 1, it is said: "No man may disparage or destroy the reputation of another. Every man has a right to have his good name

maintained unimpaired.   This right is a *jus in rem*, a right absolute and good against all the world.   Words which produce any perceptible injury to the reputation of another are called defamatory.   Defamatory words, if false, are actionable.   False defamatory words, if written and published, constitute a libel; if spoken, a slander. * * If the words, being written and * published disparage the plaintiff, or tend to bring him into ridicule and contempt;'' or are spoken of him in the way of his profession or trade, they are actionable *per se.*

In 13 Am. and Eng. Encyc. of Law, 355–6, it is said: ''Defamatory words spoken of a person in respect to his office or employment are actionable *per se.*   They must be spoken, however, while he is holding such office or pursuing such employment, and not afterwards.   Moreover, the employment must be one recognized by law as a legitimate means of earning a living.''

In Odgers' Libel and Slander (3d ed.), p. 19, the doctrine is recognized that in cases of libel, any written words will be deemed defamatory, which expose the plaintiff to hatred, contempt, ridicule, or obloquy, which tend to injure him in his profession or trade, or cause him to be shunned, or avoided by his neighbors.

In Townshend on Slander and Libel, section 4, p. 5, it is said:   ''One may be so injuriously affected by writing or effigy as to be what is termed libeled; and, in that event, the writing or effigy so affecting him is called libel or a libel, and he who puts forth such writing or effigy is denominated a libeler.''

In the case under consideration, it appears to us that the complaint is fatally defective and insufficient, in failing to set out the specific charge made against plaintiff upon which he relies to sustain his cause of action.   It constitutes the foundation of his suit that he seeks to maintain.   It is the base upon which the entire superstruc-

ture must rest. In a case like this, whether there is any liability or not depends on what was said, or on what the writing complained of contains, and the language employed must be set forth so that the court may properly judge of its sufficiency. 3 Works Plead. and Prac., 197, and cases there cited in note 2.

It may be further suggested that the complaint in question does not state the number of persons living in said district, entitled to vote at school meetings therein, or who they were; nor does it specify the names of any persons who signed the petition, or how many there were who attached their names thereto, so that the court might determine whether they constituted a majority of the patrons entitled to vote at such meetings. We also think the complaint is insufficient in another particular; it contains no direct allegation that the defendants knew the charges were false, or that they were not fully proven on the trial.

For the reasons herein indicated, in our opinion, the court below did not err in sustaining the demurrer to the complaint.

The judgment is affirmed.

Filed May 18, 1894.