STATE TAX COMMISSION OF UTAH v. KATSIS.

No. 5788. Decided November 20, 1936. (62 P. [2d] 120.)

*E. A. Rogers* and *Shirley P. Jones,* both of Salt Lake City, for appellant.

*Ned Warnock,* of Salt Lake City, for respondent.

WOLFE, Justice.

This is an appeal from a judgment of the district court of Salt Lake county against defendant Katsis for a balance of $665.87 sales tax, penalties, and interest. It is one of those rare cases which will be better followed by dovetailing the statutory law and the facts. Chapter 63, Laws of Utah 1933, as amended by chapter 20, Second Special Session Laws 1933, is in this opinion referred to as the Sales Tax Act. Section 5 of said act (as amended) provides that persons receiving payment on sales of property or service subject to the sales tax shall make a return on the 15th day of each month for the preceding month and remit the taxes "so collected." Defendant, who operated a business in Salt Lake City selling meals and other tangible personal property, filed returns of sales from October 16, 1933, to and including September 30, 1934; said returns showing a tax due of $118.10 which defendant paid.

Section 8 of the act provides that the Tax Commission, as soon as practical after the return is filed, shall examine it, and if it then appears that the correct amount of the tax is greater or less than that shown in the return, the tax shall be recomputed. If the amount paid is less than the amount due, the difference, together with the interest thereon, etc., shall be paid by the vendor ten days after notice and demand to him from the Tax Commission. In pursuance of this section, W. W. Dansie, Chief Auditor of the Tax Commission, caused the tax to be recomputed and sent to the defendant a paper headed, "State of Utah, State Tax Commission," underneath which appeared the words, "Penalties, Interest and Deficiencies Assessed for Period from 10/16-33 to 9/30/34." The paper was directed to the defendant, setting out his address. On the lower half of the mimeographed form, under the title "Additional Amount to Assess," appeared on various lines:

"Specific penalty    10% penalty ...............$ 57.19
  Interest on 571.90 at 1% a month .............. 36.98
  Deficiency in tax ........................... 571.90

    Total ................................$665.87  (Not paid)"

And still lower on the right-hand side, "Prepared by M. Gordy," and on the left-hand side, "Approved by W. W. Dansie," the latter name signed by pen. This was introduced as Plaintiff's Exhibit A over objection. Exhibit B, also introduced over objection, was a letter written on an official letterhead of the State Tax Commission reading as follows and admitted to have been received by defendant Katsis:

                                "December 5, 1934
"Chris Katsis (Glenwood Club)
  "20 West Third South
  "Salt Lake City, Utah
"Dear Sir:
    "As a result of a recent examination of your sales tax returns for the period from October 15, 1933 to September 30, 1934 this office proposes an additional tax liability in the amount of $571.90 plus 10% penalty of $57.19, and interest of $36.78 making a total liability of $665.87 as shown in the schedule attached to this letter.
    "Payment of the additional tax, together with penalty and interest thereon should be made within ten days from date of this letter.
                 "Respectfully yours,
                   "State Tax Commission
                   "By (Signed) W. W. Dansie."

Katsis failed to respond to the letter.

Section 12 of the act provides in part that:

    "If any person, having made a return and paid the tax provided by this act, feels aggrieved by the assessment made upon him by the tax commission, he may apply to the tax commission by petition in writing within ten days after the notice is mailed to him for a hearing and a correction of the amount of the tax so assessed."

Katsis did not apply for a hearing or a correction. Plaintiff then brought an action in the district court of Salt Lake county for the $665.87 under section 11 of the act. Judgment was given for this amount, and defendant appeals.

It is claimed that the recomputation of the auditor stands as the assessment of the Commission, and that since it was unpaid, it may by section 11 of the act be collected "by appropriate judicial proceedings," which authorized the suit in the district court for the unpaid assessment. Defendant does not deny that such judicial proceedings may be brought to collect a tax, but contends that the alleged assessment is not in fact an assessment because not an act of the Commission, in that the Commission did not personally act upon it. It is admitted that the actual arithmetical computation of the assessment is a ministerial act and that the commissioners do not personally, or sitting as a commission, have to compute it, but it is contended that the Commission must approve or adopt the auditor's or the employee's computation; otherwise any mere employee might send out an exaggerated guess as the assessment which could as well be the act of the Commission.

In order properly to comprehend the plaintiff's position, at this juncture we shall give the gist of other sections of the statute. Section 12 further provides that if a person apply for a hearing and correction, the Commission shall set a time and place for hearing and notify the petitioner, and at such hearing the "tax commission may make such order in the matter as may appear to be just and lawful and furnish a copy of such order to the petitioner."

Section 13 provides in part:

"Every decision of the tax commission shall be in writing and notice thereof shall be mailed to the vendor within ten days."

Section 14 provides in part:

"Within thirty days after notice of any decision of the tax commission, any party affected thereby may apply to the supreme court of this state for a writ of certiorari or review for the purpose of having the unlawfulness of such decision inquired into and determined."

Reverting again to section 13, it provides further that,

"all such decisions [of the Commission] shall become final upon the expiration of thirty days after notice of such decision shall have been

mailed to the vendor, unless proceedings are taken within said time for review by the supreme court upon writ of certiorari as herein provided."

From these sections it will be noted that only in case a taxed person applies for a hearing and correction do the provisions of sections 13 and 14 become applicable. If the recomputation is a proper act of the Commission and no application for hearing and correction is filed within ten days after notice is mailed to him, the assessment ■ must stand and can be sued on. Defendant, as before stated, does not gainsay this, but contends that the computation was not the Commission's assessment but the auditor's assessment. Respondent (plaintiff) contends that the defendant cannot question the validity of the assessment in the court proceedings except that he may question jurisdiction to make the assessment. The argument is that section 13, as above quoted, makes the decision of the Commission final, and section 14 provides that,

"The decision of the tax commission may be reviewed both upon the law and facts [as disclosed by the record]," etc.,

and that this is the only procedure by which the acts of the Commission may be questioned. If a person assessed fails to apply for a hearing and correction within ten days, he has barred himself from further review of the Commission's assessment, and he cannot open up the question of proper amount or validity of the assessment when the processes of the courts are used by the Commission to obtain a judicial declaration of indebtedness—in short, a judgment.

" 'As a general rule,' says Mr. Throop in his work on Public Officers (section 552), 'judicial and quasi judicial acts are conclusive, except when a method of reviewing the same is given by statute; and then they are conclusive for every purpose, except for the purpose of such a review.' " School Dist. No. Two v. Lambert, 28 Or. 209, 42 P. 221, 225.

"The conclusion arrived at by the board of assessors, as certified by the abstract of ratables, is an adjudication which cannot be controverted collaterally." Board of Chosen Freeholders of Ocean County v. Committee of Township of Lacey, 42 N. J. Law, 536.

While the facts on which a quasi judicial decision is based may not be attacked collaterally, we believe that at least the question of the Commission's jurisdiction and the question of whether the assessment was the Commission's act may be raised. Otherwise, the law would have provided that an abstract of the assessment be filed in the clerk's office and docketed as a judgment as is provided in the case of an award of the Industrial Commission.

The remaining question is: Was the act of the auditor the Commission's act? If the Commission had power to deputize this matter to the auditor and had actually done so, it would then be the Commission's act. The fact that the legislature gave the Tax Commission authority to employ agents, statisticians, experts, attorneys, and other assistants and employees as may be necessary to perform its duties does not give the Commission authority directly or by implication to deputize those matters which are quasi judicial in character. It takes authority from the Legislature to appoint a general deputy. If such deputy may be appointed or the Commission is given authority by the Legislature to deputize quasi judicial matters to others, it may do so. *Dorr* v. *Clark*, 7 Mich. 310; *Andres* v. *Circuit Judge*, 77 Mich. 85, 43 N.W. 857, 6 L. R. A. 238; *Wilkerson* v. *Dennison*, 113 Tenn. 237, 80 S.W. 765, 106 Am. St. Rep. 821, 3 Ann. Cas. 297; *Steinke* v. *Graves*, 16 Utah 293, 52 P. 386. Ministerial acts may be delegated to others. "Merely ministerial functions may be delegated to an officer or committee." *Jewell Belting Co.* v. *Village of Bertha*, 91 Minn. 9, 97 N. W. 424, 425, citing *Harcourt* v. *Common Council*, 62 N.J. Law, 158, 40 A. 690.

"Where judgment and discretion are required of municipal officers they cannot be delegated without express legislative authority."

*State* v. *City of Paterson*, 34 N. J. Law, 163. The final question then arises: Is the so-called act of assessment in this case a quasi judicial or ministerial act? Neither party has given us much aid in his brief on this controlling question. We have therefore been compelled to conduct an in-

dependent investigation into the authorities. Appellant cites several cases holding that an assessment is a quasi judicial act. Assessment of real estate or assessment of payments for local improvements have been so held. 26 R. C. L. § 311; Cooley on Taxation (4th Ed.) §§ 1052, 1046; *Weaver* v. *Devendorf*, 3 Denio (N. Y.) 117; *Elmore* v. *Overton*, 104 Ind. 548, 4 N. E. 197, 54 Am. Rep. 343; note, 79 Am. Dec. 474.

The difficulty in this case lies in the type of act. If the assessment is a recomputation of a return, i. e., a mere mathematical checking up from the figures presented by the return to the final result so that no other result could be arrived at, it might well be a mere ministerial act, and perhaps no good purpose would be served by requiring the Commission to adopt this inevitable result. But if there is anywhere in the process of the so-called recomputation some act requiring the exercise of quasi judicial powers, the Commission must, as a commission, pronounce the so-called assessment. It must exercise that judgment required in the process. The matters of arithmetical computation may be done by others. The matter of determining whether an act involves only ministerial or quasi judicial functions, or both, is at times very difficult.

A "ministerial act" has been defined as follows:

"The duty is ministerial, when the law, exacting its discharge, prescribes and defines the time, mode and occasion of its performance, with such certainty that nothing remains for judgment or discretion." *Grider* v. *Tally*, 77 Ala. 422, 54 Am. Rep. 65.

"A ministerial act may be defined to be one which a person performs in a given state of facts in a prescribed manner in obedience to the mandate of legal authority, without regard to or the exercise of his own judgment upon the propriety of the acts being done." 2 Bouv. Law Dict., 416; 27 Cyc. 793.

A "quasi judicial act" has been defined as a judicial act performed by one not a judge.

"The term 'judicial' may be applied to the act of an executive officer who, in the exercise of his functions, is required to pass on facts and determine his action by the facts found; this is sometimes called

a quasi judicial function." "Where a power vests a judgment or discretion, so that it is of a judicial character or nature but does not involve the exercise of the functions of a judge, or is conferred upon an officer having no authority of a judicial character, the expression used is generally quasi judicial." 34 C. J. 1180.

While these definitions appear adequate in the abstract, as a matter of fact it will be discovered that in applying them there are many acts held to be ministerial which take in an element of judgment.

In the instant case, the so-called "recomputation," if it stands, became a lien on the taxpayer's property and is in the nature of an assessment. The question is whether the Tax Commission, therefore, should not review the estimate and assessment of the auditor before it can stand as a tax and be sued upon.

It appears by section 8 of the Sales Tax Act that,

"If any part of the deficiency is due to negligence or intentional disregard of authorized rules and regulations with knowledge thereof, but without intent to defraud, there shall be added ten per cent of the total amount of the deficiency and interest in such a case shall be collected at the rate of one per cent per month," etc. "If any part of the deficiency is due to fraud with the intent to evade, then there shall be added not more than one hundred per cent of the total amount of the deficiency," etc.

If there is no negligence, intentional disregard, or fraud with intent to evade, only interest at the rate of one-half of one per cent. per month is charged. It appears, therefore, that it was necessary to adjudge from the evidence which of these situations pertained. The pleadings state the deficiency was ascertained "from an examination of the records of said defendant and other sources available to" the Commission. A penalty of 10 per cent. was added to the claimed deficiency by the auditor. The ascertainment of whether any penalty and, if so, the proper one to apply, was a quasi judicial function, as likewise, from all we know from the record, the ascertainment of the deficiency may be. From the principles laid down above, this could not be delegated

to the auditor. The court below was, therefore, in error in giving judgment because the assessment was not the act of the Commission itself.

It is contended that there was no demand for the extra tax as required by section 8. We think the letter was a demand. It used the word "proposed." That was a polite demand in view of the sentence, "Payment of ■ the additional tax, together with the penalty and interest thereon should be made within ten days from date of this letter." The whole letter constituted a "notice and demand." If the word "demand" had been used, it would not be more efficacious in informing the appellant of what was required of him.

The judgment of the lower court is reversed, with instructions to enter judgment of dismissal in favor of the defendant. Costs to appellant.

ELIAS HANSEN, C. J., and FOLLAND, EPHRAIM HANSON, and MOFFAT, JJ., concur.