### DETROIT EDISON COMPANY v. CORPORATION & SECURITIES COMMISSION.

1. TAXATION—COMPUTATION OF TAX—DELEGATION OF POWER.
   Generally judicial or quasi-judicial duties of an officer relating to the computation of a tax cannot be delegated in the absence of express statutory authorization so to delegate.

REFERENCES FOR POINTS IN HEADNOTES

[1, 4, 5] 51 Am Jur, Taxation § 664.
   Extent of power of tax commission or other officials charged with duty of administering tax statute to deputize or delegate to others matters relating to computation of tax. 107 ALR 1482.
[2] 42 Am Jur, Public Administrative Law § 66.
[3] 43 Am Jur, Public Officers § 341.
[6] 42 Am Jur, Public Administrative Law § 206 *et seq.*
[7] 14 Am Jur, Costs § 106.

2. SAME—CORPORATION TAX APPEAL BOARD—QUASI-JUDICIAL DUTIES.
   An appeal from the corporation. and securities commission to the corporation tax appeal board, a statutory board consisting of the attorney general, State treasurer, and auditor general, imposed a duty upon the latter 3 officers that was quasi-judicial in nature (CLS 1956, § 450.309).

3. OFFICERS—PUBLIC OFFICERS—EX-OFFICIO SERVICES—COMPENSATION.
   Ex-officio services are those imposed by law upon a public officer by virtue of his office, relating to public interests as contradistinguished from those relating to private interests; and for which no remuneration is allowed.

4. ATTORNEY GENERAL—DEPUTIES AND ASSISTANTS—CORPORATION TAX APPEAL BOARD.
   The attorney general is an ex-officio member of the corporation tax appeal board and the deputy attorney general and assistant attorneys general are empowered by statute to act for the attorney general as a member of such board (CLS 1956, §§ 14-.35, 450.309).

5. TAXATION—CORPORATION TAX APPEAL BOARD—COMPUTATION OF TAX—STATE TREASURER—AUDITOR GENERAL.
   The State treasurer and auditor general must personally act as members of the corporation tax appeal board, since they are designated as members thereof without statutory authority having been conferred upon their respective deputies to exercise the quasi-judicial discretion involved in a recomputation of the tax upon a corporation (CLS 1956, § 450.309).

6. APPEAL AND ERROR—CORPORATION TAX APPEAL BOARD—QUESTIONS REVIEWABLE.
   The Supreme Court does not have authority to review substantive questions presented on an appeal from the determination of the corporation tax appeal board that was not properly constituted in that deputies functioned for the State treasurer and auditor general without statutory authority so to do (CLS 1956, § 450.309).

7. COSTS—PUBLIC QUESTION—CORPORATION TAX APPEAL BOARD.
   No costs are allowed on appeal from the corporation tax appeal board, where a public question was involved (CLS 1956, § 450-.309).

SMITH and EDWARDS, JJ., dissenting.

Appeal from Corporation Tax Appeal Board. Submitted January 7, 1960. (Docket No. 31, Calendar No. 48,333.) Decided September 16, 1960.

The Detroit Edison Company, a New York corporation, protested and appealed the redetermination of its annual franchise fee by the Michigan Corporation and Securities Commission. Amount of claimed deficiency increased by the appeal board. Plaintiff appeals. Reversed and remanded.

*Fischer, Sprague, Franklin & Ford* (*Harvey A. Fischer* and *Gerald C. Simon,* of counsel), for plaintiff.

*Paul L. Adams,* Attorney General, *Samuel J. Torina,* Solicitor General, *T. Carl Holbrook* and *William D. Dexter,* Assistant Attorneys General, for defendant.

KELLY, J. Appellant filed its 1956 corporate annual report and paid the corporation and securities commission the sum of $1,131,061.63 as its annual franchise fee. The commission determined that the fee was deficient in the amount of $54,848.10. A redetermination was made at appellant's request, and the deficiency was again assessed at the same amount. An appeal was taken to the corporation tax appeal board, during the pendency of which appellant paid the deficiency under protest.

When the proceedings on appeal were commenced, appellant vigorously objected to a hearing before the chief assistant attorney general, the deputy State treasurer, and the deputy auditor general, contending that the 3 above named did not constitute a statutory board and, therefore, was an appeal board without jurisdiction. The objection was overruled, and the hearing proceeded with exception granted.

The deputies sat throughout the hearing, and the board's final decision increasing the deficiency from $54,848.10 to $62,436.72 was signed by the deputies in their own names.

Appellant presents 5 questions in its statement of questions involved. The first question presented is as follows:

"Do the chief assistant attorney general, the deputy State treasurer, and the deputy auditor general have any authority to perform the quasi-judicial duty of the appeal board provided for in section 9 of PA 1921, No 85, as amended, 'to recompute the liability of the taxpayer,' when that duty is imposed upon elected public officers, *viz.*, the attorney general, the State treasurer, and the auditor general, as statutory members of this appeal board?"

The conclusion and the prayer for relief in appellant's brief contain the following statements:

"The appellant concludes that the appeal board as composed of the deputy officers was an invalid board. It should have consisted of the elected public officers designated by the taxing statute. The decision of this invalid board was therefore a nullity. Appellant is entitled to a hearing before the statutory board. On the possibility, however, that such appeal board's action may be held to be valid, the appellant has been compelled in order to protect its rights on appeal to raise the issues set forth in questions 2, 3, 4 and 5 above. * * *

"Appellant respectfully requests this Court to reverse, set aside, and hold for naught the decision of May 29, 1959, entered by the invalidly constituted appeal board with instructions that the properly elected constitutional public officers hear the cause."

PA 1921, No 85, § 9, as amended (CLS 1956, § 450-.309 [Stat Ann 1959 Cum Supp § 21.210]), provides in part:

"Any corporation conceiving itself to be aggrieved by any such redetermination may appeal within 20 days after notification thereof to an appeal board composed of the attorney general as its chairman, the State treasurer, and the auditor general as its secretary. The appeal board shall recompute the liability of the taxpayer and shall notify the taxpayer and the commission promptly on its decision.

"The commission and/or the corporation may, within 30 days after notification of such decision, and not after, appeal from the decision of the appeal board to the Supreme Court of the State."

The general principle that judicial or quasi-judicial duties relating to the computation of a tax cannot be delegated in the absence of express statutory authorization so to delegate, is set forth in 107 ALR 1482.

There is no doubt (and appellee so admits) that the statutory duty imposed on the attorney general, the State treasurer, and the auditor general in appellant's appeal was quasi-judicial in nature. Appellee states:

"In advancing the argument that the board was properly constituted in the instant case, counsel for the appellee are not unmindful of the authorities referred to by the appellant in its brief limiting the activity of deputies to the ministerial duties of their principals but respectfully submit that the basic question here posed is one of the construction of specific statutory language pertaining to the composition of the corporation tax appeal board during the sickness or absence of the auditor general and State treasurer and by specific designation of the attorney general to have the chief assistant attorney general sit in his stead."

The Revised Statutes of 1846, chapter 12, §§ 9 and 26, gave the treasurer and the auditor general the authority to appoint deputies:

"Sec. 9. The treasurer may appoint a deputy, for whose acts he shall be responsible, and may revoke such appointment at pleasure; and such deputy may execute the duties of the office during the sickness or necessary absence of the treasurer, and shall receive an annual salary at the rate of $700, payable quarter yearly."

"Sec. 26. The auditor general may appoint a deputy, for whose acts he shall be responsible, and may revoke such appointment at pleasure; and such deputy may execute the duties of the office during the sickness or necessary absence of the auditor general, and shall receive an annual salary at the rate of $700, payable quarter yearly."

The above-quoted sections, amended without significant change, are the law today. See CL 1948, §§ 12.9, 13.26 (Stat Ann §§ 3.83, 3.130).

By PA 1917, No 153, the legislature granted to the attorney general the right to appoint a deputy to sit for him on boards and commissions. This act provided:

"He (deputy attorney general) may also serve in place of the attorney general as a member of the Michigan securities commission, created by Act 46 of the Public Acts of 1915, and other boards and commissions of which the attorney general now is or may hereafter be an ex-officio member."

The attorney general's right to designate assistant attorneys general to sit on administrative boards has been granted by CLS 1956, § 14.35 (Stat Ann 1952 Rev § 3.188), which provides as follows:

"In addition to a deputy provided by law, the attorney general may appoint such assistant attorneys general as he may deem necessary, and who when appointed to such office shall take and subscribe the constitutional oath of office. Any such assistant attorney general may, when designated thereto by his principal, serve in the place of the attorney general

as a member of the public debt commission created by Act No 13, Public Acts of 1932, Extra Session, and on any other board or commission of which the attorney general is now or may hereafter be an ex-officio member, appear for the State in any suit or action before any court or administrative body, or before any grand jury, with the same powers and duties and in like cases as the attorney general."

The claim was made in *Chemical Bank & Trust Co.* v. *County of Oakland,* 264 Mich 673, that action taken by the loan board in approving the issuance of bonds was void because the deputy attorney general, instead of the attorney general, acted thereon without authority. In disposing of this claim, this Court stated (pp 685, 686):

"It is claimed the action of the loan board was invalid because the attorney general did not act in person thereon. The approval of the issuance of the bonds in question was made by the loan board, the State treasurer and the auditor general being present, and the attorney general being represented by the deputy attorney general. It is claimed the deputy attorney general had no power to act. PA 1917, No 153 (CL 1929, § 184),* provides that the attorney general may appoint a deputy attorney general. 'He (deputy) may also serve in place of the attorney general as a member of the Michigan securities commission created by PA 1915, No 46, and other boards and commissions of which the attorney general now is or may hereafter be an ex-officio member.' What are ex-officio services? They are services imposed by law upon a public officer by virtue of his office. 'They are services which relate to the public interests, or business of the county or State, as contradistinguished from those relating to the private interests of individuals.' *Gilbert* v. *Justices of Marshall County,* 18 B Mon (57 Ky) 427, 430. 'When the State requires services to be

---

* CL 1948, § 14.41 (Stat Ann 1952 Rev § 3.201).—Reporter.

performed by its officers, for which no remuneration is allowed, they must be regarded as ex-officio services, for which no charge can be made.' *Allin* v. *Mercer County,* 174 Ky 566, 570 (192 SW 638). See, also, *Wortham* v. *Grayson County Court,* 13 Bush (76 Ky) 53. The attorney general is ex officio a member of the loan board and the deputy attorney general had a right to act thereon."

The attorney general is an ex-officio member of the corporation tax appeal board and the deputy attorney general and assistant attorneys general were empowered by statute to act for the attorney general as a member of said board.

Appellee calls attention to the fact that the attorney general, State treasurer, and auditor general are ex-officio members of many State boards or commissions. Appellant answers by stating:

"The rule of law under which the appellant has challenged the authority of the deputies to sit for their principals in the instant case involves situations where the members have a *quasi-judicial* duty to make a *tax computation.* * * * We have carefully examined the powers of each of the boards and commissions listed by the appellee. Not one involves the computation of a tax or the extent of a taxpayer's liability (except the corporation tax appeal board which is the one under discussion)."

The legislature in clear and certain language created the corporation tax appeal board "composed of the attorney general as its chairman, the State treasurer, and the auditor general as its secretary." (CLS 1956, § 450.309 [Stat Ann 1959 Cum Supp § 21.210].)

The legislature clearly provided that the attorney general had the privilege and power to designate his deputy or assistant to represent him on the board. The legislature did not grant a similar right to the State treasurer or to the auditor general. Un-

til such a right to so designate is granted to the State treasurer and the auditor general we conclude that it is the legislative wish and mandate that the State treasurer and the auditor general personally act as members of the corporation tax appeal board.

The legislative enactment (in existence without substantial change since 1846) giving power to the State treasurer and the auditor general to appoint a deputy who "may execute the duties of the office during the sickness or necessary absence" of the treasurer or auditor general, cannot be construed to authorize the deputy to exercise quasi-judicial discretion and in an ex-officio capacity recompute the liability of the present appellant as a taxpayer.

We do not agree with appellee that "this Court has the authority to review the substantive questions presented even though it were to determine the board was not properly constituted" because "a nonprejudicial or harmless error has generally been said not to constitute a basis for reversal of a case."

We agree with appellant's contention that: "The board being invalid, there was no hearing and no decision. Without such a hearing and decision there is nothing for this Court to review."

The decision of the appeal board is reversed, set aside and held for naught, and the cause is remanded for further proceedings consistent with this opinion. No costs, a public question being involved.

DETHMERS, C. J., and CARR, BLACK, and SOURIS, JJ., concurred with KELLY, J.

EDWARDS, J. (*dissenting*). This appeal presents 2 questions of some considerable importance:

Was the corporation tax appeal board (hereinafter referred to as the "board") consisting of the chief assistant attorney general, the deputy State treasurer, and the deputy auditor general lawfully

constituted to hold a hearing and issue a decision as provided in PA 1921, No 85, § 9, as amended by PA 1954, No 153?

. Was the item "Reserve for deferred Federal income taxes," appearing on the appellant's balance sheet in the amount of $13,712,026, properly included as "surplus" for franchise fee computation purposes under PA 1921, No 85, § 4, as amended by PA 1954, No 144?

Mr. Justice Kelly would hold that the corporation tax appeal board which heard this case was invalidly constituted because the deputy auditor general and the deputy State treasurer sat as members, and would remand this matter for hearing before a reconstituted board.

There is, of course, no doubt that the statute creating the board did not specifically authorize the deputies to substitute for their principals, the attorney general, the State treasurer, and the auditor general, who were named therein. CLS 1956, § 450-.309 (Stat Ann 1959 Cum Supp § 21.210).

Justice Kelly, however, concedes that other legislation allowing the attorney general to appoint a deputy and assistant attorneys general also authorizes such assistants to sit on the corporation tax appeal board. See CLS 1956, § 14.35 (Stat Ann 1952 Rev § 3.188).

We think that the legislature, when it authorized the treasurer and auditor general to appoint deputies, likewise granted them the power to function for their superiors in performing the duties legislatively assigned to the office.

Thus the statute authorizing the appointment of a deputy treasurer provides:

"The State treasurer may appoint a deputy, for whose acts he shall be responsible, and may revoke such appointment at pleasure; and such deputy may

execute the duties of the office during the sickness or absence of the State treasurer." CL 1948, § 12.9 (Stat Ann 1952 Rev § 3.83).

And the statute authorizing appointment of a deputy auditor general provides:

"The auditor general may appoint a deputy for whose acts he shall be responsible, and may revoke such appointment at pleasure; and such deputy may execute the duties of the office during the sickness or absence of the auditor general." CL 1948, § 13.26 (Stat Ann 1952 Rev § 3.130).

It appears undisputed that since the creation of the corporation tax appeal board the administrative interpretation placed upon the above statutes was that membership upon the tax appeal board was one of the "duties of the office" within the meaning of the statutory provisions just quoted.

While such interpretation, even if as here undisputed for years, is not binding on this Court, it is entitled to respectful consideration. *Boyer-Campbell Co.* v. *Fry*, 271 Mich 282 (98 ALR 827).

In determining the legislative intent of these 2 provisions, we can properly take into account also the fact that the State treasurer is assigned ex-officio membership on 14 other boards and commissions by other legislative enactments, while the auditor general has 7 additional such assignments. Such a multiplicity of assignments suggests that the legislature could not reasonably expect them to be performed by 1 person.

The fact that this board obviously performs quasi-judicial functions is not determinative of the question as to whether or not a deputy may properly sit thereon. Mr. Justice KELLY recognizes this when he holds that the deputy attorney general was a properly qualified member.

The ALR annotation relied upon by Justice KELLY concerning this quasi-judicial distinction is entitled:

"Extent of power of tax commission or other officials primarily charged with duty of administering tax statute to deputize or delegate to others matters relating to computation of tax or extent of taxpayer's liability."   107 ALR 1482.

The annotation deals primarily with cases wherein deputies were administratively authorized and appointed.   In such instances, the courts have held that such deputies could perform ministerial functions for their principal, but not the quasi-judicial duties assigned to him by statute.   *State Tax Commission of Utah* v. *Katsis,* 90 Utah 406 (62 P2d 120, 107 ALR 1477); *Woodman* v. *Auditor General,* 52 Mich 28; *Paldi* v. *Paldi,* 84 Mich 346.

In the first case (cited as the leading case by appellant), the Utah court said (p 412):

"The fact that the legislature gave the tax commission authority to employ agents, statisticians, experts, attorneys, and other assistants and employees as may be necessary to perform its duties does not give the commission authority directly or by implication to deputize those matters which are quasi judicial in character.   It takes authority from the legislature to appoint a general deputy.   If such deputy may be appointed or the commission is given authority by the legislature to deputize quasi-judicial matters to others, it may do so.   *Dorr* v. *Clark,* 7 Mich 310; *Andres* v. *Ottawa Circuit Judge,* 77 Mich 85 (6 LRA 238); *Wilkerson* v. *Dennison,* 113 Tenn 237 (80 SW 765, 106 Am St Rep 821, 3 Ann Cas 297); *Steinke* v. *Graves,* 16 Utah 293, (52 P 386)."

In our present case we deal with statutorily created deputies, statutorily authorized to perform "the duties" of the office.

We find no need to amend the legislative authorization by judicially excepting the quasi-judicial duties assigned to the office.

We hold that the corporation tax appeal board which heard this case was properly constituted under the legislative enactments quoted.

As to the second question, which reaches the merits of the tax dispute, we can be more brief.

The essence of plaintiff's contention is that $13,-712,026 which it has set aside on its books as a "reserve for deferred Federal income taxes" should not be considered as a part of its "surplus" for purpose of computing the privilege fee required to be paid by PA 1921, No 85, as amended.

The applicable statutory definition of "surplus" is as follows:

"The term 'surplus,' as used in this act, shall be taken and deemed to mean the net value of the corporation's property, less its outstanding indebtedness and paid-up capital; but in no case, either as to domestic or as to foreign corporations, shall any deduction be made from the item of paid-up capital, in computing the franchise fee thereon, by reason of any impairment of the same." CLS 1956, § 450-.304 (Stat Ann 1959 Cum Supp § 21.205).

We have recently construed this definition in these terms:

"The corporation privilege tax statute should be read and administered to secure to the State all sums justly due it, but no more.

"Surplus, as that term is used in determining the privilege fee payable by a corporation for doing business in this State, is the difference between assets and liabilities plus paid-up capital." *Duluth, South Shore & Atlantic R. Co.* v. *Corporation & Securities Commission* (syllabi), 353 Mich 636.

The only substantial question presented here is whether or not the "reserve" set up on appellant's

books is an "outstanding indebtedness" within the meaning of the statute. In determining the answer, the corporation and securities commission was not required to accept at face value the accounting labels on appellant's balance sheet. *In re Appeal of Hoskins Manufacturing Co.*, 270 Mich 592.

There is no need to use complex language to describe an essentially simple situation. The Detroit Edison has in past years built additional physical facilities for the purposes of its business of supplying power and light. In computing its Federal income taxes it has elected (as it was legally entitled to do) to employ 2 accelerated methods of depreciation. These methods of depreciation had the effect of allowing it to charge off the cost of these facilities in 5 years. The effect of this accelerated depreciation was to reduce the Federal income tax which Detroit Edison actually paid in each of these years as compared to what it would have had to pay without this accelerated depreciation.

Upon accountants' advice, Detroit Edison set up an account to which were charged a portion of such tax savings. The purpose claimed for this "reserve" was to enable Detroit Edison more easily to meet the possibility of higher income taxes in future years when these accelerated depreciation benefits were exhausted.

We are not concerned with whether or not this is a sound accounting practice or good business, or even whether or not it is a procedure required by orders of the public service commission. Assuming the truth of all of appellant's contentions in these matters, none of them has the effect of turning this "reserve" into "an outstanding indebtedness," or of removing these funds from the definition of surplus which we have cited.

The corporation tax appeal board found:

"In the instant case the Federal income taxes for which the reserve of $13,712,026 has been segregated were not owing and unpaid as of the date of the annual report, December 31, 1955.

"For all of the reasons hereinbefore assigned, it is the conclusion of the appeal board that the sum of $13,712,026 did not constitute an outstanding indebtedness at the date of the annual report and that appellee was correct in including this sum as a part of the surplus of the appellant."

Appellee's expert witnesses testified as to the reserve in question (Lyle D. Hepfer):

"*Q. (By Mr. Dexter, continuing)*: Now, getting to your opinion, Mr. Hepfer, as an expert, I believe you stated that in your opinion this reserve was not a liability, in the generally accepted sense of that term?

"*A.* It is my opinion that it is not a liability, at the balance sheet date, payable as a current obligation to the United States treasury department.

"*Q.* Is there any outstanding obligation existing at the balance sheet date to which this item could be related?

"*A.* I see no existing liability at the balance sheet date."

(Samuel Beglin):

"*Q.* Now, in your opinion, what is the nature of the charge to be made to this reserve for deferred Federal income taxes?

"*A.* You mean the credit to this account?

"*Q.* Yes. * * *

"*A.* In my opinion, I would not consider this as being an outstanding indebtedness of the company."

An expert witness, Philip R. Potter, testified:

"*Q.* Now, would you care to express an opinion on that, as to whether or not at December 31, 1955,

this reserve might not be properly considered part of the stockholders' equity as of that date—not thinking in terms of regulatory purposes, but I am thinking of you, as an expert accountant?

"*A.* * * * Insofar as The Detroit Edison Company is concerned, at December 31, 1955, if it went into liquidation, it is doubtful whether the internal revenue department has any claim on any accumulated reserve at that point.

"*Q.* Well, it is a fact that they do not, isn't it? I mean, this is not a deferred item in reference to anything—in reference to any tax liability incurred on past transactions, as such, is it?

"*A.* * * * I know of nothing in the internal revenue code from which I draw the conclusion that there is a tax liability presently.

"*Q.* And nothing would indicate that in the present code?

"*A.* Nothing that I know of. I may have overlooked something, but I know of nothing presently, as the code is presently promulgated, that would make that a liability of The Detroit Edison Company, if, at December 31, 1955, they liquidated."

This record leaves no doubt but that Detroit Edison had clear title to these funds, and that they are unencumbered by any present legal obligation.

Where there is competent evidence to support the findings of fact of the board, this Court does not reverse. *Duluth, South Shore & Atlantic R. Co.* v. *Corporation & Securities Commission, supra.*

Nor was the Tax Appeal Board in error in recomputing the liability of the taxpayer and including several smaller items which the Michigan corporation and securities commission had mistakenly excluded from plaintiff's surplus account.

Section 9 says:

"The appeal board shall recompute the liability of the taxpayer." CLS 1956, § 450.309 (Stat Ann 1959 Cum Supp § 21.210).

This language is ample to authorize the recomputation made here.

The decision should be affirmed. No costs, matters of statutory construction being involved.

SMITH, J., concurred with EDWARDS, J.

KAVANAGH, J., did not sit.