## STATE TAX COMMISSION v. SPANISH FORK.

No. 6162.   Decided March 29, 1940.   (100 P. 2d 575.)

*Alfred Klein,* of Los Angeles, Cal., and *Alvin I. Smith* and *Richard L. Bird, Jr.,* both of Salt Lake City, for appellant.

*Joseph E. Nelson,* of Spanish Fork, and *Elias Hansen,* of Salt Lake City, for respondent.

WOLFE, Justice.

This is an appeal from a judgment which held that the statute of limitations against a claim for sales taxes began to run from the date that Spanish Fork, as a collector of sales taxes, was by law required to make a return for sales taxes due. Appellant contends that the statute of limitattions did not begin to run until Spanish Fork, or the Commission for it, actually made the return. This appeal must be resolved by determining whether the view of the lower court or that of the appellant is correct.

Persons liable for the collection of sales taxes are, by Sec. 5, Chap. 20, Laws Utah 1933, Second Special Session, required on the 15th day of each month to file a return covering the preceding month and to remit the sales taxes collected during that period, except that, when the total amount of the tax for any one month does not exceed $10, a quarterly return and remittance may be made instead.

In this case the respondent filed no return covering any of the monthly taxing periods from January 1, 1934 ,to July 31, 1936, until August 13, 1936, when a return was filed covering the entire period and showing a tax liability of $1,251.89 with $195.85 interest. On September 18, 1936, appellant gave notice to respondent to pay this sum and demanded payment. In May, 1938, appellant brought action for the same, except $380.47 paid on January 12, 1938. The sum sued for was, therefore, $1,067.27

If the statute of limitations begins to run from the date the return should be made, then in this case it began to run as to each of the various monthly sums due, beginning with the first on February 15, 1934, and started to run as to each succeeding month's taxes on the 15th of each next month through August 15, 1936, covering the tax period of Jan-

uary 1, 1934, to July 31, 1936. If, however, it does not begin to run until the return is actually made, it did not begin to run before August 13, 1936, for all the amounts up to June 30, 1936, and not before August 15, 1936, for the amount of the tax collected by respondent in July 1936—it being conceded that none of the monthly amounts for which respondent was liable was less than $10.

We think the statute does not begin to run at least until the return is actually made either by the vendor-taxpayer or by the Commission in case the vendor-taxpayer fails to make it. It is not necessary at this time to determine whether it may in certain instances start to run from a subsequent time. Before the passage of Sec. 1, Chap. 138, Laws Utah 1937, the statute of limitations applicable to liabilities imposed by statute, which includes the sales tax, was one year.

If the plaintiff could prove that the defendant had collected the tax it is quite probable that an action for money had and received might have been brought under the theory set out in *Attorney General* v. *Pomeroy*, 93 Utah 426, 73 P. 2d 1277, 114 A. L. R. 726. But this would not prevent the Tax Commission from bringing its action on the failure to perform the statutory duty to make a return and remit the tax regardless of whether collected. Certainly the vendor-taxpayer could not escape his statutory liability by showing that he failed to collect the tax, although he could escape an action for money had and received by showing that he never had received it. Both parties to this suit evidently treated the action as one brought on the statutory liability and we shall so treat it.

The statutes of limitation pertain to claims owing to the State as well as to private individuals. Sec. 104-2-31, R. S. U. 1933. *In re Swan's Estate*, 95 Utah 408, 415, 79 P. 2d 999; *Attorney General* v. *Pomeroy*, supra. Under Sec. 104-2-26, R. S. U. 1933, the time within which the present action could have been brought, under the

theory that the statute of limitations did not begin to run at least until a return had been made, was August 13, 1937. But Sec. 1, Chap. 138, Laws of Utah 1937, made the period in which such claims could be brought, three years instead of one, thus extending the period two years. This new statute of limitations became effective on May 11, 1937, which was before this action was barred by the previous one-year statute. Therefore, the time within which the action could be brought was extended for two years or at least until August 13, 1939. Since the action was brought in May, 1938, it was well within the extended period.

The conclusion that the statute does not begin to run at least until the date of actual return and not from the date of required return is based on the following reasoning: By Sec. 104-2-1, R. S. U. 1933, civil actions must be brought within the prescribed time "after the cause of action shall have accrued." The question is then, when did the cause of action accrue? The general rule is that it accrues at the time it becomes remediable in the courts, that is when the claim is in such condition that the courts can proceed and give judgment if the claim is established. In *Sweetser* v. *Fox*, 43 Utah 40, at page 48, 49, 134 P. 599, 602, 47 L. R. A., N. S., 145, Ann. Cas. 1916C, 620, we find:

"It is a rule of universal application that a cause or right of action arises the moment an action may be maintained to enforce it and that the statute of limitations is then set in motion. The test, therefore, is, Can an action be maintained upon the particular cause of action in question? If it can, the statute begins to run."

See, also, *Last Chance Ranch Co.* v. *Erickson*, 82 Utah 475, 25 P. 2d 952; *Federal Reserve Bank* v. *Atlantic Trust Co.*, 5 Cir., 91 F. 2d 283, 117 A. L. R. 1160; *Centennial Eureka Mining Co.* v. *Juab County*, 22 Utah 395, 404, 62 P. 1024; *National Bank of Claremore* v. *Jefferies*, 126 Okl. 283, 259 P. 260; *New York & Pennsylvania Co.* v. *New York C. R. Co.*, 300 Pa. 242, 150 A. 480; *Bishop* v. *Genz*, 212

Wis. 30, 248 N. W. 771; Wood on Limitations, 4th Ed., p. 684, 37 C. J. 810, 811, 17 R. C. L. 748, 749. Ordinarily, a cause of action for a debt begins to run when the debt is due and payable because at that time an action can be maintained to enforce it. But when some controlling statute or a contract existing between the parties provides that an additional thing be done before action may be brought, such as a statutory provision that a return must be filed, or, as in some insurance contracts, a provision that suit may not be brought before a certain time after the claimed loss, the statute of limitations does not start to run until the time when suit may be maintained even though interest on the amount of the liability may begin to run from the time it is due and payable. In this case the vendor-taxpayer itself made a belated return but in determining whether the Commission has standing in Court before a return is actually made we shall assume the situation in which the Commission could most reasonably claim that it was in position to bring suit against the taxpayer, to wit: the case where the taxpayer made no return at all.

Using this test we find that the Tax Commission is not in position to pursue its remedy in the courts in any case at least until an actual return has been made. If the vendor-taxpayer fails to make a return, the Commission must make one for him and follow it with demand. A brief examination of the statutes prescribing proceedings for assessing sales taxes will reveal this. The machinery for assessing or ascertaining the claim of the Tax Commission when the vendor-taxpayer files no return is provided by Sec. 9, Chap. 63, Laws Utah 1933. If the tax debtor fails to file a return, the Tax Commission mails him a notice to do so. If he still fails, it makes a return for him from the "best information available," notifies him, and demands the tax as assessed. This is the basis on which the Tax Commission makes its claim. There are administrative provisions for a hearing and for a determination of the justness of this

claim which may be invoked by the taxpayer, who may also bring certiorari to the Supreme Court. But ultimately what the Tax Commission sues for if the tax is not paid, is the sum which is assessed after the actual filing of a return by the vendor-taxpayer or by the Commission for him. Only by invoking the above-mentioned administrative procedure may the tax debtor question the tax or deficiency as assessed. He cannot collaterally attack the tax or deficiency so found, except in limited respects. *State Tax Commission* v. *Katsis*, 90 Utah 406, 62 P. 2d 120, 107 A. L. R. 1477. He cannot sit by and wait for the Tax Commission to sue him and then raise all the questions which he might have raised if he had taken advantage of his rights under the law. He must exhaust his administrative remedies. And, by the same token, neither can the Tax Commission, by itself failing to make return when the tax debtor fails to do so, sue without assessing the tax. It must sue for a stated amount. It cannot ask the court to fix the amount which should have been administratively fixed. If it did so it would not be in a position to maintain the action or to enforce it. Consequently, it would not be in a position to meet the test laid down in *Sweetser* v. *Fox,* supra.

And the authorities support this view. *Riley* v. *Howard*, 193 Cal. 522, 226 P. 393; *Preston* v. *Anderson County Levee Improvement Dist. No.* 2, Tex. Civ. App., 3 S. W. 2d 888; *Barnes* v. *Turner,* 14 Okl. 284, 293, 78 P. 108, 10 L. R. A., N. S., 478, 2 Ann. Cas. 391. This ruling also comports with the equities of the case. The omission of an imposed duty designed to advise an administrative body of an event which sets its process in motion, should not accrue to the advantage of the one who failed in the duty. This turns a delict into a triumph. Holding otherwise makes it the duty of the Tax Commission to ferret out and sue for taxes, businesses which may never have filed a return and of the existence of which the Commission is unaware. To the contention that the Tax Commission, by delay in filing a return for the tax debtor

when he failed to file one for himself, may thus postpone the running of the statute, the ready answer lies that the vendor-taxpayer could have prevented such a result by filing the return.

It may be asked further how, without the filing of a return, is the Commission to know when the statute begins to run? If the tax is less than $10 for any month the taxpayer, under Sec. 5, need only remit and make return on or before the 15th day of the month succeeding the end of the quarter in which the tax is collected.

The judgment appealed from is reversed, with instructions to reinstate the action. Costs to the appellant.

McDONOUGH and PRATT, JJ., concur.

MOFFAT, C. J., concurs in the result.

LARSON, JUSTICE (dissenting in part).

When did plaintiff's cause of action accrue? What was the earliest moment at which an action could have been maintained to enforce it? For at that time the statute of limitations began to run. Said this court in *Sweetser* v. *Fox*, 43 Utah 40, 134 P. 599, 602, 47 L. R. A., N. S., 145, Ann. Cas. 1916C, 620:

"It is a rule of universal application that a cause or right of action arises the moment an action may be maintained to enforce it and that the statute of limitations is then set in motion. The test, therefore, is, Can an action be maintained upon the particular cause of action in question? If it can, the statute begins to run."

It may also be stated as axiomatic that a cause of action for money accrues and an action therefor may be maintained at the time the money is due and payable in the absence of express statutory provisions providing a different remedy.

The statute expressly provided that a sales tax due and unpaid shall constitute a debt due the state from the vendor

and may be collected by an action at law. That is, any time after it is due and unpaid an action at law to recover the same may be instituted. Section 11, Chap. 63, Laws Utah 1933. When is the tax due and payable? By Sec. 5 of Chap. 63 it is provided that the seller shall collect the tax and shall *"on or before the fifteenth day of each month,* make a return to the state tax commission for the pr[e]ceding month and *shall remit the taxes so collected to the state tax commission."* (Italics added.) It is further provided that if the *total tax to be remitted* shall not, during any month, exceed the sum of $10, a quarterly return *and remittance* may be made on or before the fifteenth day of the month succeeding the end of the quarter. Sec. 8, relative to overpayments and deficiencies, declares, "If the amount paid is less than the amount due, the difference, together with interest thereon at the rate of one half of one per cent per month, *from the time the return was due,* shall be paid by the vendor * * *" (Italics added.) It further provides that if any part of the *deficiency* [amount due and unpaid] is due to negligence or intentional disregard of rules, without intent to defraud, there shall be added a penalty of 10 per cent of the total amount of the deficiency, and interest on such amount shall be collected at the rate of *one per cent per month from the time the return was due.* And if any part of the deficiency is due to fraud with the intent to evade there shall be added not more than one hundred per cent of the deficiency and an additional one per cent per month *from the time the same was due.* The next section declares that if the return is not made by the seller, the Tax Commission may make a return and the whole amount due thereon shall *be deemed a deficiency and subject to the penalties and interest* provided in Sec. 8. Secs. 10 and 11 contain further references indicative of the tax being due on the 15th of the month succeeding its collection by the seller, and delinquent and subject to penalties and interest after that date.

We believe it is elemental that penalties for nonpayment cannot be added to any obligation until after the same is

due and unpaid. Likewise it is established that interest cannot be charged on taxes until after they are delinquent. As shown above, the act expressly provided not only that the tax is due and payable to the state on the 15th of the month succeeding its collection by the seller, but also provided for interest on the tax, penalties, and interest on the penalties from such date. I must conclude therefore that the tax is past due and delinquent on the 16th of the month following its collection by the seller; that an action at law for collection would lie from that date, and therefore upon such date, each month, the statute of limitations begins to run against tax for the previous month. It seems to me that the effect of the prevailing opinion is simply to relieve an administrative body from the responsibility of doing its statutory duty, by surrounding it with a shroud inscribed "As long as we do nothing, limitations cannot run against us." I believe that a public officer is under obligation to discharge his duties with the same diligence as would be required of him in private service.

It is next urged that Sec. 104-2-26, R. S. U. 1933, being the one-year statute, was amended by Chap. 138, Laws Utah 1937, changing the time to bring an action on a liability founded on statute to three years, and therefore this action was timely brought. This amendment became effective May 11, 1937, so any causes of action accruing before May 11, 1936, were barred before the amendment took effect. This court and courts generally are committed to the doctrine that when an action is barred it is beyond the power of the legislature to revive the same. *In re Swan's Estate,* supra. and cases there cited. See annotation 36 A. L. R. 1316. And when a statute of limitations has run against a part of an obligation the bar is effective as to that part. *Buell* v. *Duchesne Mercantile,* 64 Utah 391, 231 P. 123; 36 C. J. 854. This rule bars recovery on all taxes except those of April, May, June and July of 1936. Does the amendment extend the time for bringing action for these months? The amend-

ment to the statute is silent as to affecting existing causes of action. The cases are not harmonious as to whether such statute affects existing causes of action, or only those which accrue thereafter. An examination of the cases reflects generally the distinction that where the change in the statute affects only the remedy the Legislature may change the time or manner of enforcing a right or existing cause of action as long as it does not extinguish or wipe out an existing right. Parties to contracts have no vested interests in particular limitation laws or methods of procedure for the enforcement of rights. But where changes in statutes attempt to create or set up new causes of action or new legal rights or relationships which did not theretofore exist, they are generally held to affect or apply only to matters or relationships springing up after the act takes effect. An excellent discussion and annotation is found in 46 A. L. R. pp. 1095-1108, 77 A. L. R. 1347. It would seem therefore that the amendment of 1937, extending the period of limitations should apply to the causes of action for the four months indicated, such causes not being barred prior to the effective date of the act. The judgment should be reversed and the cause remanded to the District Court with directions to determine the taxes due for the months of April, May, June and July, 1937, and award plaintiff judgment for such amount with interest from the due dates; and to determine whether plaintiff is on the facts entitled to penalties on amounts due for those months, and if so to include the proper penalties in the judgment.