STATE of Utah, ex rel., Linn C. BAKER, State Treasurer, Plaintiff and Appellant,

v.

INTERMOUNTAIN FARMERS ASSOCIATION, a Utah Agricultural Cooperative, Defendant and Respondent.

No. 17902.

Supreme Court of Utah.

June 3, 1983.

David L. Wilkinson, Craig L. Barlow, Salt Lake City, for plaintiff and appellant.

J. Thomas Greene, H. Russell Hettinger, Salt Lake City, for defendant and respondent.

OAKS, Justice:

This suit for declaratory judgment involves the application of the Uniform Disposition of Unclaimed Property Act, U.C.A., 1953, § 78–44–1, *et seq.*, and the applicable statute of limitations, § 78–12–23, to the unclaimed patronage credits of a farmers' cooperative. On stipulated facts and cross-motions for summary judgment, the district court entered judgment for the Cooperative. We affirm.

Intermountain Farmers Association (Cooperative) is a nonprofit cooperative serving agricultural producer-members and other patrons. Each year, its revenues in excess of operational expenses are credited back to patrons in proportion to their patronage. Initially, these patronage credits only affect the books of the Cooperative, where they appear as "equity of patrons retained for working capital" of the Cooperative. They are not subject to withdrawal by the member or other patron. When practicable, the board of directors of the Cooperative declares that particular patronage credits of a specific year are redeemable in cash. When this happens, these credits are payable on

demand, but until claimed for payment, the Cooperative continues to use them as equity of patrons.

During 1971, the board of directors of the Cooperative declared that effective February 1, 1972, designated patronage credits from 1949 to 1952 would be redeemed by the Cooperative.[1] Six years after the effective date of that redemption, on February 1, 1978, patronage credits totalling $65,771 had not been claimed for payment. This is the amount at issue in this case. The State Treasurer claimed this amount under the Unclaimed Property Act, and the Cooperative claimed it under its bylaw, both quoted below.

Utah enacted the Uniform Disposition of Unclaimed Property Act, effective May 1957. Instead of providing for escheat (transfer of ownership) of property to the State, which requires cumbersome procedures and raises constitutional doubts, the Unclaimed Property Act "is custodial in nature." Commissioners' Prefatory Note, 8 U.L.A. 116 (1972). When funds or property have been held long enough to be presumed abandoned, their holder reports them and then pays them over to the State, which "takes custody and remains the custodian in perpetuity." *Id.* So far as material to this case, § 5 of that Act, U.C.A., 1953, § 78–44–5, provides as follows:

> Any stock or other certificate of ownership, or any dividend, profit, distribution, interest, payment on principal, or other sum held or owing by a business association [2] for or to a shareholder, certificate holder, member, bondholder, or other security holder, *or a participating patron of a cooperative,* who has not claimed it, or corresponded in writing with the business association concerning it, within seven years after the date prescribed for payment or delivery, is presumed abandoned if:
>
> 1. It is held or owing by a business association organized under the laws of or created in this state .... [Emphasis added.]

A few months after the adoption of the Uniform Act, in the fall of 1957, the board of directors of the Cooperative adopted a bylaw which provided that any amounts remaining unclaimed from the Cooperative for three years after the payable date should be transferred as a gift from the owners thereof to the Cooperative's newly established Education and Research Fund to advance the cause of producing and marketing farm products. In August 1974, this bylaw was amended to the text quoted in the footnote [3] (still in effect), which substitutes a six-year period and provides allocation to the various operating departments rather than to a specific fund.

Also at issue in this case is the applicable statute of limitations, which prescribes a six-year period "after the cause of action shall have accrued" for commencing a civil action "upon any contract, obligation or liability founded upon an instrument in writing ...." § 78–12–1, § 78–12–23.

At the threshold, we must construe § 5 of the Unclaimed Property Act and the bylaw of the Cooperative to determine the point at which the times specified in those provisions begin to run in the case of patronage cred-

---

1. The patronage credits subject to payment on Feb. 1, 1972, were as follows:

| | | |
|---|---|---|
| 1952 Turkey Processing | $ 32,731.41 |
| 1952 Cert. of Interest | 88,741.67 |
| 1949 Feed | 77,911.55 |
| Total | $199,384.63 |

2. The term "business association" is defined broadly enough to include a nonprofit cooperative. § 78–44–1(2). *Cf. In re Monks Club, Inc.,* 64 Wash.2d 845, 394 P.2d 804 (1964) (nonprofit stock corporation).

3. Bylaw 16(d):

> Any moneys or funds or right to interest or property represented by any check or certificate issued to or called for retirement by the Association from any person which remains uncashed, or which, after mailing to such person at his last known address, remains unclaimed or undelivered six (6) years after the date of such issuance or call shall be brought back into income of the cooperative and allocated to each operating department based on the percent of each department's net savings to the total departmental savings. These funds would then be reallocated to the current patrons of those respective departments.

its. The parties take diametrically opposite (and perhaps internally inconsistent) positions on these issues. The State argues that the six-year period in the statute of limitations did not commence to run as to patronage credits until the Cooperative refused a patron's demand for cash (it never did) or reallocated the credits as provided in the bylaw (*i.e.,* in 1978). In opposition, the Cooperative argues that the seven-year period in § 5 of the Unclaimed Property Act has not run as to patronage credits because the statute ties it to "the date prescribed for payment or delivery" and there was no such date until a patron claimed his credits for payment (none did).

■ Considering the statutes and the bylaw in the context of the business of the Cooperative and the transaction at issue in this case, we conclude that each of the specified times runs from Feb. 1, 1972, the effective date when the Cooperative would redeem these patronage credits in cash. That was the "date prescribed for payment" under § 5 of the Unclaimed Property Act; any interpretation that required demand for or reallocation of credits before commencing the seven-year period would render the Act practically meaningless for a class of payments to which it was specifically applicable: those to "a participating patron of a cooperative ...." The six-year period in the bylaw obviously dates from this effective date of redemption.

■ We also conclude that the six-year statute of limitations commences to run against the owners on the date when the patronage credits are available for cash payment on demand. On the "date prescribed for payment," the patronage credit is no longer simply the "equity of patrons retained for working capital," but it has become, in the words of the Unclaimed Property Act, a "distribution ... or other sum ... owing by a business association ... to ... a participating patron of a cooperative ...." § 78–44–5. Just as important, pursuant to the Cooperative's bylaw, the amount in question will be forfeited to the Cooperative if not claimed within a

designated period that commences to run upon that date. Being treated as a debt as of Feb. 1, 1972, the amounts due on patronage credits were also debts on that date for purposes of the running of the statute of limitations.

■ The statute of limitations begins to run on a debt when it is due and payable, unless "a contract existing between the parties provides that an additional thing be done before action may be brought...." *State Tax Commission v. Spanish Fork,* 99 Utah 177, 182, 100 P.2d 575, 577 (1940). Thus, when it is contemplated that an amount will not be paid immediately, such as where a bank holds a deposit subject to check or payment of interest, the statute of limitations does not run until payment is demanded and refused. *Esponda v. Ogden State Bank,* 75 Utah 117, 124, 283 P. 729, 731 (1929).[4] Similarly, when specific property is segregated for the express benefit of a particular claimant or group of claimants, such as a trust deposit to secure a debt, the statute of limitations will not run until the trustee repudiates the trust. *Thomas v. Glendinning,* 13 Utah 47, 56, 44 P. 652, 654 (1896); *Bank of America National Trust & Savings Association v. Cranston,* 252 Cal. App.2d 208, 220, 60 Cal.Rptr. 336, 343 (1967) (involving Unclaimed Property Act). None of these exceptions applies in this case. By the terms of the owner's relationship with the Cooperative, the patronage credits were payable immediately on the redemption date of Feb. 1, 1972, and no separate fund had been segregated. In addition, the clock was already running toward the time designated for their forfeiture to the Cooperative.

As so interpreted, the bylaw, the statute of limitations, and § 5 of the Unclaimed Property Act pose a conflict we must resolve. The Cooperative argues that under either the bylaw or the statute of limitations, the owners' claims to the $65,771 unpaid balance of the patronage credits were barred on Feb. 1, 1978, after which the bylaw properly authorized their allocation

**4.** As to banks, this outcome is confirmed by statute. § 78–12–34.

to the operating departments, which was done.[5] In opposition, the State argues that the bylaw is invalid as contrary to law and public policy and that the Unclaimed Property Act prevails over the statute of limitations, lest stakeholders be able to engage in manipulations that could totally emasculate the Act. To resolve this conflict, we must consider the relationship between the statute of limitations and the Unclaimed Property Act.

■ It is well settled from the custodial nature of the Unclaimed Property Act that the rights of the State are merely derivative from the rights of the owners of the abandoned property. *Bank of America National Trust & Savings Association v. Cranston,* 252 Cal.App.2d at 211, 60 Cal.Rptr. at 338; *Insurance Company of North America v. Knight,* 8 Ill.App.3d 871, 876, 291 N.E.2d 40, 44 (1973); *South Carolina Tax Commission v. Metropolitan Life Insurance Co.,* 266 S.C. 34, 39, 221 S.E.2d 522, 523 (1975). *Cf. Pacific Northwest Bell Telephone Co. v. Department of Revenue,* 78 Wash.2d 961, 481 P.2d 556 (1971) (escheat statute). "[T]he state has no greater right than that of the payee owner." *Insurance Company of North America v. Knight, supra.* Consistent with our statutory duty to construe the Act so as "to effectuate its general purpose and to make uniform the law of those states which enact it," § 78–44–27, we reaffirm that construction and proceed to consider its impact on the Act's relationship to the statute of limitations.

Section 16 of the Uniform Disposition of Unclaimed Property Act provided that the expiration of a limitations period should not prevent funds from being presumed abandoned nor affect the holder's duty to report and pay them over to the State.[6] As to this provision, the Commissioners' Note that accompanies the Uniform Act cautions that § 16 may need to be modified or eliminated before enactment in states whose constitutions have been interpreted to recognize a vested right in one who has the defense of the statute of limitations. The Commissioners' Note suggests, indirectly, that Utah may be one of these.[7] It suggests several alternatives for such a state: (1) The Legislature might assure that the period for presuming abandonment was shorter than the period of limitations. (2) It might modify the statute of limitations to lift its ban in cases affected by the Unclaimed Property Act. (3) Or it might "conclude to permit the statute of limitations to serve as a defense" in such cases. Commissioners' Note, 8 U.L.A. 144–45 (1972).[8]

---

**5.** The Cooperative apparently concedes that the 1974 bylaw amendment was retroactive to the patronage credits declared payable in 1972, so that the 1974 period of six years superseded the earlier period of three years. On the basis of the language of the bylaw, we reject the State's argument that the six-year period in the 1974 bylaw should run from 1974 rather than 1972, so the Cooperative could not allocate this balance until 1980.

**6.** § 16. Periods of Limitation Not a Bar

The expiration of any period of time specified by statute or court order, during which an action or proceeding may be commenced or enforced to obtain payment of a claim for money or recovery of property, shall not prevent the money or property from being presumed abandoned property, nor affect any duty to file a report required by this act or to pay or deliver abandoned property to the [State Treasurer].
8 U.L.A. 144 (1972).

**7.** On this point, the Commissioners' Note refers the reader to the "cases collected in" 36 A.L.R.

1316 (1925) and 133 A.L.R. 384 (1941). 8 U.L.A. 144 (1972). Prominent among the cases noted there are *Ireland v. Mackintosh,* 22 Utah 296, 61 P. 901 (1900), and *In re Swan's Estate,* 95 Utah 408, 415, 79 P.2d 999, 1002 (1938), which hold that a claim barred by the statute of limitations cannot be revived by subsequent legislative action. Although the holding in *Ireland v. Mackintosh* is apparently a matter of statutory construction, the opinion suggests that this construction is motivated by serious doubts on the constitutionality of a legislative revival. 22 Utah at 301–02, 61 P. at 902. We express no opinion on this question and only note it as information available to the Legislature when the Uniform Act was adopted in Utah.

**8.** A fourth alternative was to adopt the Uniform Act and depend on the courts to construe the overriding of the statute of limitations in § 16 prospectively to preserve its constitutionality. This was done in *Douglas Aircraft Co. v. Cranston,* 58 Cal.2d 462, 374 P.2d 819, 24 Cal. Rptr. 851 (1962), and *Country Mutual Insur-*

■ Utah did not enact § 16 of the Uniform Act. The omission was deliberate. The Bill originally introduced in the Legislature embodied the entire Uniform Act, but § 16 was subsequently omitted in an amendment put forward by the sponsor of the Bill. Utah S.B. 77, 32d Leg.Sess., 1957 *Senate Journal* 83, 344–46, 614. The State offers no explanation or construction of this omission. The Cooperative argues that this deliberate omission of a provision that would have directed that unclaimed property be reported and paid over to the State notwithstanding the expiration of a period of limitations establishes the legislative intent that the running of a statute of limitations should supersede the effect of the Unclaimed Property Act. For this and the other reasons cited below, we agree.

The legislative history suggests the reason for omitting § 16—to avoid doubts about its constitutionality as to claims already barred by the statute of limitations.[9] This omission is especially significant in view of other references to the statute of limitations in the Act as adopted. The Legislature enacted without change the Uniform Act provision requiring the holder to notify the owner before reporting the unclaimed property "if the owner's claim has not been barred by the statute of limitations . . . ." § 78–44–11(5). In addition, in contrast to its deletion of § 16, the Legislature amended the Uniform Act to add a provision that an owner of property or the proceeds of property that has been delivered to the State can claim the same from the State, and "[n]o statute of limitations shall bar the filing of a claim." § 78–44–18.

■ The conclusion that the effect of the Unclaimed Property Act can be superseded by the running of the statute of limitations is consistent with the derivative nature of the Uniform Act, discussed earlier. Once the statute of limitations precludes action by the owner, the State has no higher claim to require the fund or other property to be handed over to its custody. This result is also consistent with the language of § 5: once the statute of limitations has run, the distribution or other sum is no longer "held or owing by a business association . . . to a . . . participating patron of a cooperative," § 78–44–5, and therefore need not be reported or turned over to the custody of the State.

Finally, this construction is confirmed by a regulation the State Treasurer published a few months after the Act was adopted, as authorized in § 78–44–25. The terms of this regulation, quoted in the footnote,[10] confirm the fact that a few months after the Act was adopted the State Treasurer, who was charged with the administration of the Act, *cf. West Jordan v. Department of Employment Security,* Utah, 656 P.2d 411 (1982), thought that the Act did not apply to funds whose payment was barred by the statute of limitations.[11]

Since our conclusion that the State has no right to the custody of these patronage credits is based on the applicability of the statute of limitations to a particular type of property covered by a particular bylaw provision of the holder, we have no occasion to

---

*ance Co. v. Knight,* 40 Ill.2d 423, 240 N.E.2d 612 (1968).

**9.** See discussion following note 6, *supra.*

**10.** Rules and Regulations of the Uniform Disposition of Unclaimed Property Act administered by the Utah State Treasurer, Rule 10:

Change of Ownership Rights. When the owner's right to claim property held by another has been barred either by a statute of limitations, the contract under which the property was held, or under the terms of the instrument, or the law under which entitlement arose, prior to the time the holder is required to report and deliver abandoned

property to the State Treasurer under this act, it is not necessary to report such property.

**11.** The State attempts to dismiss this regulation as inapplicable because it was not promulgated as required by the Administrative Rule-making Act, § 63–46–1, *et seq.,* which was not enacted until 1973. In view of the limited purpose we have made of the rule—merely to indicate an administrative construction—*it is* unnecessary for us to express any opinion on whether the rule was in force in the period from 1957 to 1973, or thereafter.

rule on other questions argued by the parties, such as whether the bylaw provision (considered independent of the statute of limitations) is contrary to public policy under the Unclaimed Property Act. We also express no opinion on the applicability of the statute of limitations to any type of unclaimed property other than patronage credits.

The summary judgment for the Cooperative is affirmed.

HALL, C.J., and DURHAM, J., concur.

HOWE, Justice: (concurring in the result).

I concur in the result solely on the basis that the six year statute of limitations bars the collection by the State of the unclaimed patronage credits. I express no opinion as to the propriety of the by-law since any consideration of it is unnecessary to the disposition of this case.

STEWART, J., dissents.