**STATE TAX COMMISSION of Utah,**
**Plaintiff and Appellee,**

v.

**Clay K. IVERSON, Defendant**
**and Appellant.**

**Nos. 20965, 860329.**

Supreme Court of Utah.

Nov. 2, 1989.

David L. Wilkinson, Stephen G. Schwendiman, and Maxwell A. Miller, Salt Lake City, for plaintiff and appellee.

Clay K. Iverson, Garrison, pro se.

HALL, Chief Justice:

Clay K. Iverson appeals two decisions by the Tax Court Division of the Third District Court issuing a writ of mandate compelling him to file income tax returns and judging him to be in contempt of court for failing to comply with a subpoena *duces tecum* issued by the Utah State Tax Commission ("the commission"). On appeal, Iverson challenges the tax court's jurisdiction, the sufficiency of the evidence to justify issuance of the writ of mandate, the commission's jurisdiction, the effect of the commission's acts on his constitutional rights, and the validity of the administrative subpoena. The cases were consolidated for purposes of appeal.

### Case No. 20965

In May 1985, Iverson was served with a verified petition for writ of mandate pursuant to Utah Code Ann. § 59–31–7 (Cum.Supp.1986) (amended 1987).[1] The petition in part alleged that Iverson was a resident of the state of Utah "gainfully employed and/or earn[ing] commission income" during the years 1979–82, in amounts sufficient to require Iverson to file federal, and thus state, income tax returns for those taxable years. The petition also alleged that Iverson failed to file Utah individual income tax returns for that period.

In response, Iverson denied the commission's allegations and challenged the jurisdiction of the tax division of the district court. These and other contentions were raised during a hearing on the commission's petition wherein the commission unsuccessfully attempted to introduce into evidence what was purported to be a federal internal revenue audit of Iverson's financial affairs. The hearing was continued at the commission's request for additional discovery time.

In a subsequent hearing, the commission called Iverson as a witness in order to confirm the allegations of its petition. After several general questions were asked and answered, the court intervened and declared that it would issue the writ of mandate. The commission then requested that the court take judicial notice of the fact that Iverson's services, exchanged for property or substance, were comparable to at least the minimum wage.

While Iverson raises several points on appeal, his claim regarding the sufficiency of the evidence is dispositive here. Utah Code Ann. § 59–31–7 (Cum.Supp.1986) (amended 1987) states:

(1) If a taxpayer fails to file any return required pursuant to Title 59 within 60 days of the time prescribed, the state tax commission may petition for a writ of mandate to compel the taxpayer to file the return. The petition may be filed, in the discretion of the tax commission, in the tax court of the third judicial district or in the district court for the county in which the taxpayer resides or has his principal place of business. In the case of a nonresident taxpayer the petition shall be filed in the third district court.

The court shall grant a hearing on the petition for a writ of mandate within 20 days after the filing of the petition or as soon thereafter as the court may determine, having regard for the rights of the parties and the necessity of a speedy determination of the petition.

Upon a finding of failure to file a return within 60 days of the time prescribed pursuant to Title 59, the court shall issue a writ of mandate requiring the taxpayer to file a return. The order of the court shall include an award of

---

1. Title 59 of Utah Code Ann. (Cum.Supp.1986) was amended by 1987 Utah Laws chapter 3, section 56, effective February 6, 1987, and was renumbered. The amendments do not affect the outcome of this appeal.

attorneys' fees, court costs, witness fees and all other costs in favor of the prevailing party.

(2) Nothing in this section shall limit the remedies otherwise available to the state tax commission under Title 59 or other laws of this state.

Utah Code Ann. § 59–14A–48 (1974) (amended 1987) provides:

Persons required to file returns.—An income tax return with respect to the tax imposed by this act shall be filed by:

(a) Every resident individual, estate or trust required to file a federal income tax return for the taxable year;

(b) Every nonresident individual, estate or trust having federal gross income derived from sources within the state for the taxable year and required to file a federal income tax return for such taxable year.

The Internal Revenue Code outlines the requirements and amounts for individuals obligated to file federal income tax returns. The commission contends that the writ of mandate was appropriately entered inasmuch as Iverson's pleadings and his conduct at the final hearing support the conclusion that under the above statute and tax provisions, he received income in amounts "well over the minimum level of income at which everyone must file a tax return."

In his response to the commission's petition, Iverson stated in part:

I do not work by way of privilege but as a matter of right and lay claim to this right as one of my God given Inalienable Rights guaranteed by the United States Constitution and protected by the Utah Constitution. In this capacity, I do not effect or affect a public interest in that I do not engage in public trade, commerce, business or industry but work as a matter of private contract....

... I am a FREEMAN, and work at the COMMON LAW, I exchange property for property and do not engage in PUBLIC CREDIT. I do not use Banks to conduct my private business for I deal on a cash basis. My labor is my property and is mine and mine only for the enjoyment thereof and I do not voluntarily share this enjoyment with the State of Utah through contract agreement. I am a FREEMAN, A MERCHANT AT LAW, dealing on a cash basis and I do not owe a reporting to the State of Utah for some contract agreement placing me under privilege, incorporation or franchise.

Apart from those general comments, Iverson specifically denied that he received "income" for the period in question and stated that to the best of his knowledge, he had no filing requirement as to federal taxes. Even in the light most favorable to the commission, these statements in no way give rise to the conclusion that for the period in question, Iverson received income actually amounting to the specific sum required by law before an individual must file a federal and thus, under the applicable statutes, a state income tax return.

After the commission was unable to introduce into evidence what was purported to be a federal internal revenue audit of Iverson's financial affairs, the commission questioned him in order to substantiate the allegations in its petition:

Q [by the commission's counsel] Mr. Iverson, will you please give us your full name and address?

A Clay Iverson, 4361 West 11000 North, Highland, Utah.

Q How long have you resided at that address?

A Six years.

Q You have been a citizen and resident of the State of Utah since 1979?

A I have been domiciled in the State of Utah since 1979.

Q Have you filed any tax return with the State Tax Commission since 1979?

A No.

Q What is your occupation?

A Creator.

Q What is a creator?

A Many things.

Q Give me some specifics. What do you create?

A I don't see that has any relevance to—

THE COURT: Answer his question.

THE WITNESS: Create, I guess.

Q [by the commission's counsel] What?

A Objects.

Q Like what?

A (No response.)

Q Mr. Iverson, do you remember an informal conference that you and I had on June 20th at the Salt Lake County Library?

A I remember a conference.

Q Do you remember telling me that some of the things that you created were welding, raising goats, performing odd jobs and maintenance services for other people? Do you recall that?

A I have created those things, but not for other people always.

Q Who do you do them for?

A For me. For God.

Q Do you receive substance in return for those services?

A No.

Q Do you recall saying to me at that time that you received substance in return for those services?

A I don't recall.

Q You don't recall that? Okay, let's go through—let's get this straight. Do you do any welding?

A I know how to weld.

Q Did you do any masonry—and I'm talking about the period of 1979 to 1982. Have you done any welding for anyone?

A (No response.)

Q You don't recall?

THE COURT: Mr. Iverson, I'm going to compel you to file a meaningful tax return within 15 days, giving the reasonable value in U.S. dollars of goods and services you received in the form of materials, services, during that period of time. And if it's not filed within 15 days, I'll deem your conduct to be in contempt of the order of the Court, and I'll sentence you to 30 days in the Salt Lake County jail. Do you understand that?

[The commission's counsel]: Thank you, your Honor.

MR. IVERSON: I think I understand you, your Honor.

THE COURT: All right. It's apparent that you have got store bought clothes and you're getting by reasonably well, and we'll simply require the return.

This examination was likewise insufficient to support a determination that Iverson received income actually amounting to the minimum sum triggering the tax return requirement for each of the years in question. Additionally, although the commission claims that his conduct at the hearing "obstructed justice" and substantiated the court's decision, it ignores the fact that much of the limited exchange the court considered in making its decision (and that the commission now relies upon to impute Iverson's conduct) centered on unsworn statements regarding past conversations between Iverson and the commission's counsel—the substance of which Iverson testified he could not recall.

Further, the commission offers absolutely no evidence, and no relevant authority in lieu thereof, supporting the appropriateness of the court's taking judicial notice that Iverson's services could be equated to federal minimum wage levels and, even assuming otherwise, of the decision that Iverson necessarily received such "comparable income" in amounts actually sufficient to impose the federal tax return requirement for the years in question. Accordingly, inasmuch as the evidence received does not support the commission's allegations in its petition, the court erred in granting the writ of mandate.

*Case No. 860329*

In August 1985, the commission sent Iverson a notice of deficiency, claiming that he owed $4,604.07 in income tax for the years 1983–84. The commission informed him that pursuant to statute, he had thirty days in which to file a "Petition for Redetermination" with the commission, failing which the notice of deficiency would constitute a final assessment.[2]

In response, Iverson sent two letters to the commission challenging its notice of

**2.** *See generally* Utah Code Ann. § 59–14A–71 (Supp.1981) (amended 1987).

deficiency. Both letters indicated they were not petitions for redetermination. In his final letter, Iverson asserted that he could not file a petition for redetermination inasmuch as he was not a taxpayer and such petitions were part of the appeal process available only to taxpayers. He did, however, request commission review of the auditor's deficiency determination. After reminding Iverson on several occasions of his right to file a petition for redetermination, the commission issued a subpoena *duces tecum* commanding him to appear and testify concerning assets which could be used to satisfy the audit deficiency entered against him. When Iverson failed to appear pursuant to the subpoena, the tax division of the district court entered an order to show cause why a contempt order should not issue; after the court's hearing (at which Iverson appeared and raised his claims), it held him in contempt for failing to respond to the subpoena.

On appeal, Iverson challenges the contempt order on the basis that (1) he was not subject to the commission's administrative procedures since he was not a taxpayer, (2) the commission's subpoena was invalid, and (3) the tax division of the district court lacked jurisdiction in this case.

Utah Code Ann. § 59–14A–4(c) (Cum. Supp.1986) (amended 1987) defines the term "taxpayer" as "any individual, estate, or trust or beneficiary thereof, whose income is subject in whole or part to the tax imposed by this act." Section 59–14A–78 (1974) authorizes the tax commission to make the inquiries, determinations, and assessments of all taxes imposed, and section 59–14A–70(a) (1974) provides that upon determining that there is a deficiency in respect to tax imposed, the commission must send notice of such deficiency to the taxpayer. Thereafter, individuals determined to be taxpayers under the Act may file petitions for redetermination of the assessment, subject to Utah Code Ann. § 59–30–1 (Cum.Supp.1986).

Pursuant to this authority, the commission investigated Iverson's income, assessed taxes against him, and then afforded him the opportunity to exercise his statutory right to file a petition for redetermination and contest the amount assessed and thus (as he asserts on appeal) his status as a nontaxpayer. Nevertheless, Iverson chose not to exercise his statutory rights and did not follow this administrative procedure.

█ The law generally provides that parties must exhaust applicable administrative remedies as a prerequisite to seeking judicial review.[3] Exceptions to this rule exist in unusual circumstances where it appears that there is a likelihood that some oppression or injustice is occurring such that it would be unconscionable not to review the alleged grievance[4] or where it appears that exhaustion would serve no useful purpose.[5]

█ In *State Tax Commission v. Katsis*,[6] the defendant appealed from a judgment upholding the tax commission's determination that the defendant owed additional taxes after his return had been recomputed. When the defendant did not apply for a hearing or a correction on the assessment, the tax commission brought a successful action in the district court. On appeal, the defendant claimed that the alleged assessment was invalid "in that the Commission did not personally act upon it." Specifically, the defendant contended that while the commission did not have to compute the tax, it had to approve or adopt the auditor's computation. In response, the tax commission asserted that since the defendant did not exhaust his administrative remedies, he could not question the validity of the assessment in the court proceedings. In resolving the issue, this Court stated, "While the facts on which a quasi judicial decision is based may not be attacked col-

---

3. *Merrihew v. Salt Lake County Planning,* 659 P.2d 1065, 1067 (Utah 1983); *see infra* note 9; Utah Code Ann. § 63–46b–14 (1989).

4. *Ziegler v. Miliken,* 583 P.2d 1175, 1176 (Utah 1978).

5. *Johnson v. Utah State Retirement Office,* 621 P.2d 1234, 1237 (Utah 1980).

6. 90 Utah 406, 62 P.2d 120 (1936).

laterally, we believe that at least the question of the Commission's jurisdiction and the question of whether the assessment was the Commission's act may be raised." [7] This Court then determined that the act of the auditor in that case was not the act of the commission.

In comparison, in *Pacific Intermountain Express Co. v. State Tax Commission,*[8] the plaintiff brought an action against the state tax commission and the state of Utah to recover sales taxes paid under protest. On appeal, the plaintiff claimed that since his acts did not fall within what he believed to be the correct or plain statutory definition of "retail sale," the tax commission unlawfully imposed a tax in his case. After reviewing the plaintiff's contention that he was entitled to the benefit of strict construction in the application of provisions authorizing the commission's actions, this Court held that the procedure set forth in the Sales Tax Act was the exclusive method of seeking redress from the tax assessment and that any party aggrieved by the assessment was required to first exhaust administrative remedies by applying to the commission for redress before appealing to this Court from an adverse decision of the commission.[9] In holding such, we clarified *Katsis* by citing it for the following proposition:

> "If a person assessed fails to apply for a hearing and correction within ten days, he has barred himself from further review of the Commission's assessment, and he cannot open up the question of proper amount or *validity of the assessment when the processes of the courts are used by the Commission to obtain a judicial declaration of indebtedness...*" [10]

Additionally, this Court found untenable the plaintiff's contention that he should have been allowed to avoid administrative procedures since the tax act did not "expressly provide for payment under protest and recovery" and thus, had he followed the administrative procedures and prevailed in his claim that the tax was not due, he would not have been able to recover the sum paid. In rejecting this claim, we noted that notwithstanding the plain language of the statute, "[t]he most elemental principles of justice dictate the implication that if he pays the tax and follows the procedure set out in the Sales Tax Act and is sustained in his contention that the tax is unlawful, it must be refunded." [11]

The holding in *Pacific Intermountain Express Co.* has particular relevance in deciding this case. Similar to the plaintiff's contention therein, Iverson claims that since he did not fit the definition of "taxpayer" as it is strictly defined in the statute and as he believes his actions should be viewed, he could not exhaust the administrative remedies because following the statutory procedures outlined for administrative reconsideration would have effectively conceded his status as a taxpayer and precluded future review of his case. This claim is untenable. Certainly, if Iverson had followed the statutorily mandated administrative procedures and, based upon a petition for redetermination, was able to refute the commission's actual determination that he had earned income upon which the tax was assessed, he would have justified his claim of nontaxpayer status and "give[n] the agency an opportunity to correct any error it may have made." [12] While a failed attempt to refute the commission's position may have supported its determina-

7. *Id.* at 412, 62 P.2d at 122.

8. 7 Utah 2d 15, 316 P.2d 549 (1957).

9. 7 Utah 2d at 19–20, 316 P.2d at 551–52; *State Tax Comm'n v. Spanish Fork,* 99 Utah 177, 182–84, 100 P.2d 575, 577–78 (1940). *But cf. State Tax Comm'n v. Wright,* 596 P.2d 634, 636 (Utah 1979) (" '[I]t is not for the tax commission to determine questions of legality or constitutionality of legislative enactments.' These questions, however, could have been raised by an independent action ..." (quoting *Shea v. State Tax Comm'n,* 101 Utah 209, 212, 120 P.2d 274, 275 (1941)).).

10. 7 Utah 2d at 19–20, 316 P.2d at 551 (emphasis added) (quoting *Katsis,* 90 Utah at 411, 62 P.2d at 122).

11. 7 Utah 2d at 20, 316 P.2d at 552.

12. *Pacific Intermountain Express Co.,* 7 Utah 2d at 19, 316 P.2d at 551 (footnote omitted); *see supra* notes 3–5 and accompanying text.

tion that Iverson was a "taxpayer," it would not have prevented him on appeal from contesting the amount of his assessment and, by extension, his taxpayer status. Iverson could not sit by and wait for the commission to assess him and then raise all the underlying preassessment questions he might have raised if he had taken advantage of his rights in the manner provided by law.[13] Were it otherwise, "[t]he omission of an imposed duty designed to advise an administrative body of an event which sets its process in motion, ... [would] accrue to the advantage of the one who failed in the duty. This turns a delict into a triumph."[14]

Therefore, while a tax debtor may in limited respects attack on appeal the tax or deficiency imposed,[15] Iverson's claims in the instant case were effectively focused toward the "validity of the assessment when the processes of the courts [were] used by the Commission to obtain a judicial declaration of indebtedness."[16] As such, Iverson was required to utilize the established administrative procedures.[17] His failure to do so deprived the commission of the opportunity to hear, analyze, critically review, and possibly correct a matter within the purview of its particular responsibility and expertise.[18] The commission's view of the meaning of the terms of the individual income tax act, including the term "taxpayer," and possibly the way in which taxpayer status was determined in the instant case, is information which a reviewing court may find necessary to make an informed decision.[19] Accordingly, we do not address the efficacy of Iverson's claims concerning his status as a taxpayer or the validity of the commission's assessment and actions in regard thereto because Iverson's failure to exhaust his administrative remedies prevents him from seeking relief in such manner from the courts.[20]

In a further attack upon the contempt citation issued against him, Iverson challenges the validity of the subpoena *duces tecum* issued in this case. Specifically, he contends that the subpoena was invalid because (1) it was issued by unauthorized persons, (2) the commission's power to subpoena witnesses does not extend to "putative defendants in such proceedings," (3) the subpoena improperly compelled his appearance outside the county of his residence, and (4) it exceeded its scope of authority in subject matter.

■ Iverson initially contends that the subpoena was "not in fact issued by the State Tax Commission, but was [concocted] by a 'compliance officer' and is therefore a fraud."

The commission issued the subpoena on March 21, 1986, and thereafter set April 10, 1986, as the date for Iverson's appearance. However, because the commission was apparently uncertain as to Iverson's whereabouts, he did not receive the subpoena until April 11, 1986, when it arrived by certified mail. When the commission subsequently discovered his present address, the appearance date on the subpoena was

---

13. *State Tax Comm'n*, 99 Utah at 182–84, 100 P.2d at 577–78.

14. *Id.* at 183, 100 P.2d at 578.

15. *See Katsis*, 90 Utah at 412, 62 P.2d at 122; *supra* notes 9–10 and accompanying text; *supra* notes 4–5 and accompanying text.

16. *See supra* note 10 and accompanying text.

17. *State Tax Comm'n*, 99 Utah at 183, 100 P.2d at 577.

18. *See Johnson*, 621 P.2d at 1237 (retirement fund case).

19. *Id.* Our conclusion is further supported by rationale of the United States Supreme Court:

> It would be a disservice to the law if we were to depart from the long-standing rule that a contempt proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed and thus become a retrial of the original controversy. The procedure to enforce a court's order commanding or forbidding an act should not be so inconclusive as to foster experimentation with disobedience.

> *Maggio v. Zeitz*, 333 U.S. 56, 69, 68 S.Ct. 401, 408, 92 L.Ed. 476 (1948), *quoted in Bradshaw v. Kershaw*, 627 P.2d 528, 532 (Utah 1981) (citing *In re Mary Jane Stevens Co. v. Foley*, 67 Utah 578, 588–89, 248 P. 815 (1926)).

20. *Merrihew*, 659 P.2d at 1067.

changed to May 5, 1986, and Iverson was served at his home on April 23, 1986.

Iverson bases his claim of fraud on the fact that the signature pages on the two subpoenas were identical and "the commissioners would not reasonably sign two subpoenas on the same day, to the same person, for the same reason, but commanding him to appear on different dates almost a month apart, and then have them delivered on such divergent days." Based upon such reasoning, Iverson apparently decided not to respond as ordered. When the issue was raised before the tax court, it determined that the subpoena *duces tecum* was properly issued by the commission. Inasmuch as Iverson failed to offer any substantive evidence that a fraud occurred and since the facts in this case in no way substantiate such contention, Iverson's claim will not support a decision other than that made by the tax court.

■ Next, Iverson contends that while the power to subpoena witnesses is available to the commission under Utah Code Ann. § 59–5–46(17) (Cum.Supp.1986), he, as a defendant, is not a witness in such proceedings within the meaning of that subsection. Therefore, Iverson asserts that the commission is without power to subpoena him as a witness. As support for this claim, he cites *United States v. Minker*,[21] a case where naturalized citizens were administratively subpoenaed as witnesses in investigations created to determine whether denaturalization proceedings should be instigated against them. However, in that case the Court determined that the Immigration and Naturalization Service was not granted "power to issue subpoenas as aids in investigating *potential* naturalization offenses."[22] As Justice Black explained, in issuing the subpoena requiring the defendant to appear as a witness, an immigration officer was actually "acting under his broad power as a law enforcement officer

to follow up clues and find information that might be useful in later civil or criminal prosecutions brought against persons suspected of violating the immigration and naturalization laws."[23] As such, the object in summoning the defendant "was to interrogate him in the immigration officer's private chambers to try to elicit information 'relating to the possible institution of proceedings seeking the revocation of ... [his] naturalization....' Information so obtained might be used under some circumstances in court to take away [the defendant's] American citizenship or convict him of perjury or some other crime."[24]

This case is different. At the time the subpoena was issued requiring Iverson to testify, his assessed taxes had become final based upon his decision not to pursue a petition for redetermination.[25] The subpoena was issued to compel him to appear and testify concerning assets which could be used to satisfy in whole or in part the audit deficiency entered against him. Use of this subpoena power in such instances is analogous to the provisions of rule 69(k) of the Utah Rules of Civil Procedure which allow a court to issue an order requiring a judgment creditor to appear before the court to answer concerning available means to satisfy the judgment. In either case, the debtor testifies as a witness concerning the existence and whereabouts of available assets. The procedure in this case, unlike that in *Minker*, was an appropriate method for compelling Iverson to appear and testify as a witness concerning the assets needed to satisfy the deficiency judgment. Accordingly, this claim is without merit.

■ Iverson next contends that pursuant to rule 45(d)(2) of the Utah Rules of Civil Procedure, "a resident of the state may be required to attend an examination only in the county wherein he resides or is em-

---

21. 350 U.S. 179, 76 S.Ct. 281, 100 L.Ed. 185 (1956).

22. *Id.* at 184, 76 S.Ct. at 285 (emphasis added).

23. *Id.* at 190–91, 76 S.Ct. at 288 (Black, J., concurring).

24. *Id.* at 191, 76 S.Ct. at 288 (footnote omitted; omission in original).

25. *See generally* Utah Code Ann. §§ 59–14A–70 (1974) (amended 1987), 59–14A–71 (Cum.Supp. 1986) (amended 1987).

ployed or transacts his business in person." Iverson claims that since he was required to attend an examination outside of the county where he resides, the subpoena was invalid.

In *Pilcher v. State Department of Social Services*,[26] we stated:

> While the mode of procedure before administrative bodies may conform to the Utah Rules of Civil Procedure, the rules governing civil procedure in the trial courts are not necessarily applicable to administrative proceedings. Thus, administrative proceedings are not subject to the Utah Rules of Civil Procedure unless the governing statute or regulations so provide.[27]

Iverson has failed to demonstrate that he was prejudiced by being required to attend an examination outside the county where he resides or that the rule stated in *Pilcher* should not apply in this case. Thus, we conclude that this claim is without merit.

Iverson also contends that the subpoena was invalid inasmuch as its content exceeded the scope of authority for the purpose for which it was issued. He essentially claims that even if the commission's subpoena power could be used to compel his testimony and the production of records relating to the existence of assets which might be used to satisfy tax assessments imposed, it could not be used to obtain unrelated evidence of any additional "income" he may have earned.

■ Sections 59–5–46(17) (Cum.Supp. 1986) and 59–14A–70 and 59–14A–78 (1974) allow the commission in instances such as this to compel testimony and production of documents in order to obtain information regarding assets which may be used to satisfy assessed tax deficiencies. In addition to evidence of current assets, informa-

tion concerning assets likely to become available and assets recently transferred to avoid execution may conceptionally be appropriate areas for discovery. However, a subpoena in circumstances such as this one exceeds its scope if it requests evidence or information of income not directly related to its present existence as an asset to satisfy the judgment.[28] The tax court recognized that such was the case in noting that there were "substantial questions" in the commission's subpoena relating to evidence of Iverson's income. While such evidence (unrelated to assets) need not be divulged if Iverson chooses to purge himself of the contempt citation, the tax court correctly found that he did not have good cause for failing to appear when subpoenaed and otherwise provide information relating to the availability of assets to satisfy the tax assessment. Thus, Iverson was appropriately held in contempt.

■ Finally, Iverson argues that the Tax Court Division of the Third District Court was not empowered to hold him in contempt. Utah Code Ann. § 59–24–1 (Cum.Supp.1986) grants exclusive jurisdiction to the tax court under circumstances which do not explicitly apply in the instant case. He essentially claims that when sitting as a tax court, the district court is precluded from exercising any powers not specifically controlled by that statute.

By the plain terms of the statute, the tax court is merely a division of each of the district courts of the state. Utah Code Ann. § 78–32–15 (1987), which references the district court's power to judge a person in contempt for failing to comply with an administrative subpoena, applies in the tax division of that court. Also, as stated in Utah Code Ann. § 59–24–4 (Cum.Supp. 1986) (amended 1987; renumbered as

---

26. 663 P.2d 450 (Utah 1983).

27. *Id.* at 453 (citations omitted); *see Entre Nous Club v. Toronto,* 4 Utah 2d 98, 101, 287 P.2d 670, 672 (1955); Utah Administrative Code R. 861–06A(C) (1987).

28. We do not decide in this case whether such information may be compelled in other instances, including cases involving an individual's constitutional rights and privileges. *See generally*

*First Fed. Savings & Loan v. Schamanek,* 684 P.2d 1257, 1261–68; *id.* at 1268 (Hall, C.J., concurring specially); *United States v. Reis,* 765 F.2d 1094, 1095–96 (11th Cir.1985), and cases cited therein; *United States v. Moore,* 692 F.2d 95, 97 (10th Cir.1979), and cases cited therein; *United States v. Brown,* 600 F.2d 248, 252 (10th Cir.), *cert. denied,* 444 U.S. 917, 100 S.Ct. 233, 62 L.Ed.2d 172 (1979).

§ 59-1-604), in proceedings of the tax division of any district court, "[t]he court may affirm, reverse, modify or remand any order of the state tax commission, and shall grant other relief, invoke such other remedies, and issue such orders, in accordance with its decision, as shall be appropriate." [29] Accordingly, the district court properly had jurisdiction to act as it did in the instant case.

We have duly considered Iverson's other contentions and find them to be without merit. We vacate the writ of mandate and affirm the contempt citation.

HOWE, Associate C.J., and
DURHAM and ZIMMERMAN, JJ.

STEWART, J., concurs in the result.

---

**29.** *See Mayers v. Bronson,* 100 Utah 279, 289, 114 P.2d 213, 217–18 (1942).